**UNIVERSAL WINDOWS & DOORS, INC., d.b.a. Eagle Wood Window & Door Center of Cincinnati, Appellee,**

v.

**EAGLE WINDOW & DOOR, INC., Appellant, et al.**

[Cite as *Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc.* (1996), 116 Ohio App.3d 687.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-950669.

Decided Dec. 11, 1996.

694

*Vesper & Algie* and *Paul J. Vesper,* for appellee.

*Frost & Jacobs* and *Susan G. Faller,* for appellant.

PAINTER, Judge.

After discussions with representatives of the defendant-appellant, Eagle Window and Door, Inc. ("Eagle"), the plaintiff-appellee, Universal Windows and Doors, Inc., d/b/a Eagle Wood Window and Door Center of Cincinnati ("Universal"), signed a dealer agreement in 1991 to be a dealer of Eagle windows and doors in the Cincinnati area. The relationship lasted less than one year, ending when Eagle terminated Universal for failing to comply with Eagle's payment terms and conditions.

The rocky relationship was marred by complaints from both sides. Universal complained that Eagle's shipments were often late, incomplete, and defective, that Eagle did not properly credit Universal pursuant to the warranty for defective products, that the showroom was not properly completed by Eagle, and that Eagle improperly took away the unlimited line of credit granted to Universal. Eagle complained that Universal did not keep its account balance current and did not complete its part of the showroom in order for Eagle to finish it. Pursuant to negotiations between the parties, Eagle gave Universal credit, enabling Universal to order windows and doors first and pay within thirty days of receiving them. On March 13, 1992, Eagle terminated Universal's credit. At that point, Universal could not carry on its business because it did not have alternative credit immediately available. Dennis Smith, a representative of Eagle who worked with dealers including Universal, supplied Eagle products to the customers of Universal whom Universal did not supply after being terminated by Eagle.

Eagle had authority to immediately terminate Universal for cause under the dealer agreement. The dealer agreement also contained an integration clause stating, "This agreement constitutes and contains the entire understanding and agreement between the parties concerning the subject matter herein, and supersedes all prior negotiations, agreements or understandings, if any, between the parties, and any terms and conditions contained in any of the Dealer's purchase orders." The dealer agreement was the framework for the dealer-manufacturer relationship. However, specific terms of the relationship were not all detailed in the agreement. For example, paragraph 5.01 of the agreement concerned delivery of the product, but left the actual shipping schedule to be determined.

Payment for Eagle products and the display of Eagle products were also mentioned but left open, apparently for supplemental agreements. However, paragraph 8.07 of the dealer agreement specifically stated, "The time within which the Dealer may bring an action for breach of this Agreement shall be one (1) year from the date of any such breach."

Universal filed a complaint on September 1, 1993, seeking damages for breach of contract and tortious interference with contract. The court referred the case to its arbitration program, and the panel, in a split decision, found in Eagle's favor. When the decision was appealed *de novo* to the court, Eagle moved for summary judgment, which was denied. The case was tried before a jury, which awarded $79,830 in compensatory damages and $170 in punitive damages to Universal. The jury found that $10,000 of the compensatory damages was for tortious interference with contract. The trial judge denied Eagle's motions for a directed verdict during trial and also denied Eagle's motion for judgment notwithstanding the verdict after trial.[1] Eagle then filed this appeal.

Eagle brings four assignments of error in its appeal. The disposition of the first assignment of error renders moot all or part of the others, so we begin with it. Eagle asserts that the trial court erred by failing to apply the one-year limitations period in the contract. We find this assignment of error to be well taken.

### The Dealer Agreement's Limitation Period

■ The dealer agreement, signed on behalf of both parties by experienced businessmen, provided that suit for breach of the agreement must be brought within one year from the date of the breach.[2] Universal claims that Eagle breached by terminating the credit agreement without proper notice and therefore failed to act in good faith. Universal also claims that Eagle breached its agreement to ship orders in a timely manner. Obviously, these breaches occurred during the relationship, and the last possible breach occurred upon Universal's termination on March 13, 1992. However, Universal did not file suit until September 1, 1993, well after a year from the date of the last breach.

The United States Supreme Court has stated that in the absence of a statute to the contrary, a contract can limit the time for bringing an action if the time limit is reasonable. *Order of United Commercial Travelers of Am. v. Wolfe* (1947), 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687; see, also, *Miller v. Progressive Cas. Ins.*

---

1. The trial court granted directed verdicts for the two other defendants, Kennedy & Jobe Builders, Inc., and Dennis Smith, who are not parties in this appeal.

2. R.C. 2305.06 requires an action upon a contract to be brought within fifteen years after the cause of action accrued.

*Co.* (1994), 69 Ohio St.3d 619, 635 N.E.2d 317; *Reynolds Industries, Inc. v. Mobil Oil Corp.* (D.Mass.1985), 618 F.Supp. 419; *IBM Corp. v. Catamore Ent., Inc.* (C.A.1, 1976), 548 F.2d 1065; *Internatl. Business Lists, Ltd. v. AT & T Co.* (N.D.Ill.1994), 878 F.Supp. 102. Limiting the time by contract for properly bringing a suit "encourage[s] promptitude in the prosecution of remedies." *Order of United Commercial Travelers of Am. v. Wolfe,* 331 U.S. at 608, 67 S.Ct. at 1365, 91 L.Ed. at 1700, fn. 20, quoting *Riddlesbarger v. Hartford Ins. Co.* (1868), 74 U.S. (7 Wall.) 386, 390, 19 L.Ed. 257.

■ From the record, we conclude that the one-year limitation for a suit based on a breach of the dealer agreement was reasonable. First, the one-year limitation period is clear in the contract. We will not presume any contrary intentions of the parties when contract language is clear. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499; *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 667 N.E.2d 949. Next, Universal knew of the breaches when they occurred. Universal complained during the relationship about the problems with the shipping of the product, credits that should have been applied under the warranty, the condition of the showroom, and the termination of its credit line. Universal did not need a long discovery period to learn of its cause of action. Finally, the one-year period should have provided an adequate time for settlement negotiations. We hold that under the circumstances presented the one-year limitation for bringing suit was reasonable and valid, and that the trial court erred in not granting judgment for Eagle on all the breach-of-contract claims.

■ Universal further asserts that R.C. 2305.19, the saving statute, applies to this case because Universal attempted to intervene and assert the claims at issue here in a case styled *Kennedy & Jobe Builders, Inc. v. Jindal,* which was separately docketed in the court of common pleas under the number A–9209758. However, Universal did not attempt to intervene until May 6, 1993, which was after the one-year limitation period agreed to in the contract had elapsed. The saving statute has no bearing in this case because Universal did not attempt to bring its claims until after the limitation period had expired. See *Branscom v. Birtcher* (1988), 55 Ohio App.3d 242, 563 N.E.2d 731.

■ In order to circumvent the one-year-limitation problem, Universal argues that it is suing under contracts that are independent of the dealer agreement and therefore not subject to the limitation period in the dealer agreement. However, this argument must fail. The other agreements, concerning shipping of the product and the terms of credit, are part of the dealer agreement. These agreements are incidental to the dealer agreement, which encompassed the parties' whole relationship. These other agreements would not exist but for the

dealer agreement, which served as an umbrella for the dealings between the parties. For example, Universal argues that the parties had a credit agreement that was separate from the dealer agreement, and that Eagle violated this contract by terminating the credit line without notice, in bad faith. The credit terms were "one percent ten net thirty." Under these terms, Universal received a discount of one percent of the price of the products that it ordered if it paid its account within ten days. Otherwise, Universal would have had to pay within thirty days or be subject to a service charge. We fail to see how this type of arrangement, which standing alone would provide a monetary incentive for paying the debt within ten days, could exist independently of the dealer agreement. This type of arrangement would allow a borrower to make money from the lender for the privilege of borrowing. That type of lender would certainly be hard to find. Further, Eagle did not actually lend any money at all, but instead merely provided the product up front, accepting payment later. This credit arrangement cannot be separated from the dealer agreement.

Moreover, the dealer agreement included an integration clause, which superseded any prior negotiations or agreements between the parties. Supplemental agreements subsequent to the execution of the contract specifying the terms of credit and the shipping schedule, for example, could be used as parol evidence for construing the dealer agreement; however, they were not independent of the dealer agreement, and any breach of those terms had to have been sued upon within a year from the date of the breach.

Granting Eagle judgment on Universal's breach-of-contract claims disposes of Eagle's second, third, and fourth assignments of error as they pertain to the breach-of-contract claims. We still must analyze Eagle's assignments of error as they pertain to the claim of tortious interference with contract because the one-year limitation period pertained only to suits based on a breach of the agreement. Our disposition also renders moot Eagle's fifth assignment of error, in which Eagle claims that the trial court erred by ordering the record from another case to be transmitted to this court with the record of this case. The trial court granted Universal's motion to supplement the record of the case *sub judice* with the record of the case styled *Kennedy & Jobe Builders, Inc. v. Jindal.* The underlying rationale for this ruling was to allow this court to apply the saving statute to Universal's claims. Because we have held that the saving statute is inapplicable, the supplemental record has no bearing on this case. Any possible error by the trial court in supplementing the record is therefore harmless and rendered moot by our determination of the first assignment of error.

 In Eagle's second assignment of error, it claims that the trial court erred by denying its motions for summary judgment, directed verdict, and

judgment notwithstanding the verdict.[3] The standard of review when considering motions for directed verdict and for judgment notwithstanding the verdict is virtually the same. For each, the evidence is construed most strongly in favor of the party against whom the motion is directed, and the motion must be overruled unless, after construing the evidence, reasonable minds could reach no other conclusion but that, under the applicable law, the movant is entitled to a judgment in his favor. See *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145; *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 532 N.E.2d 162. A motion for summary judgment should be granted if the court, upon viewing the evidence in a light most favorable to the party against whom the motion is made, determines that (1) there is no genuine issue of material fact, (2) the movant is entitled to a judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 639 N.E.2d 1189; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

### Tortious Interference With Contract

■ With respect to the tort claim, Eagle asserts that Universal's claim of interference with contract cannot be established as a matter of law because Universal was no longer an Eagle dealer upon termination. Therefore Universal could not perform the contracts it had with its customers because it could not provide Eagle windows and doors unless it bought them from another dealer or paid Eagle for them in advance. Eagle claims that it was justified in supplying products to former Universal customers through its representative Dennis Smith because a legally protected interest of Eagle's, namely the company's reputation and goodwill, would be destroyed if it did not perform the contracts.

■ A claim for tortious interference with contract is composed of the following elements: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages. *Kenty v.*

---

**3.** Usually, any error by a trial court in denying a motion for summary judgment is harmless if a subsequent trial on the same issues demonstrates that genuine issues of material fact did exist which supported a judgment in favor of the party against whom the motion was made. *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, syllabus. But when a motion for summary judgment is predicated on a pure question of law, the denial of the motion cannot be harmless. *Balson v. Dodds* (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293; *Nayman v. Kilbane* (1982), 1 Ohio St.3d 269, 1 OBR 379, 439 N.E.2d 888. A narrow opening exists for appellate review of the denial of summary judgment after a cause of action has proceeded to a final verdict at trial if the adverse ruling was based on a pure question of law. *Donovan v. Omega World Travel, Inc.* (Oct. 5, 1995), Cuyahoga App. No. 68251, unreported, 1995 WL 588721.

*Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 650 N.E.2d 863, paragraph two of the syllabus; *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284, 629 N.E.2d 28; *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235.

Here, Eagle knew of Universal's contracts to supply windows and doors to building contractors because of the purchase orders sent to Eagle. Universal has not, however, satisfied the third element of a claim for tortious interference with contract. Universal presented no evidence that Eagle intentionally procured a breach between Universal's customers and Universal by any means other than by breaching a duty under the contract between Universal and Eagle. Tortious interference with a contract necessarily requires causing a third person not to perform the contract. *Kenty,* 72 Ohio St.3d at 418–419, 650 N.E.2d at 866, citing Restatement of the Law 2d, Torts (1979), Section 766; see, also, *Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111. Universal does not claim that Eagle caused Universal's customers to breach contracts with Universal. Universal claims that Dennis Smith, as an agent for Eagle, filled the contracts that Universal had made with its customers after Eagle breached its contract with Universal, and that Universal thereby could not perform its contracts with its customers. Any damages, such as loss of profits, that Universal claims resulted because Eagle filled Universal's contracts could have been recovered in a breach-of-contract action. However, as analyzed above, Universal failed to bring suit within the limitation period to which it agreed.

"It is well established that 'though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference.'" *Digital & Analog Design Corp. v. North Supply Co.* (1989), 44 Ohio St.3d 36, 46, 540 N.E.2d 1358, 1368, quoting *Cherberg v. Peoples Natl. Bank of Washington* (1977), 88 Wash.2d 595, 604, 564 P.2d 1137, 1143. An exception exists, however, where the breaching party indicates, by his breach, a motive to interfere with the adverse party's business relations so that any resulting interference with business is no longer merely incidental to the breach. *Id.* at 47, 540 N.E.2d at 1368, citing *Cherberg.* Universal has not asserted that Eagle's motive was to interfere with Universal's customers. Upon termination, Universal made the decision not to attempt to fill its contracts, either by obtaining other credit or by buying Eagle products from another dealer. Eagle was within its rights in filling these orders when Universal decided that it would not. See, *e.g., Pearse v. McDonald's Systems of Ohio, Inc.* (1975), 47 Ohio App.2d 20, 1 O.O.3d 164, 351 N.E.2d 788. Although the termination itself may have been wrongful, Universal's cause of action against

Eagle was predicated upon a breach of the contract between the parties, not upon any tortious interference with other contracts.

Construing the evidence most strongly in favor of Universal, we hold that reasonable minds could only conclude that Universal did not make a prima facie showing of tortious interference with a contract. We therefore hold that Eagle's second assignment of error has merit with respect to the tort claim, and that the trial court erred in not granting judgment to Eagle on this claim.

Eagle asserts in its third assignment of error that the trial court erred in its jury instructions and by refusing to give the jury instructions and interrogatories that Eagle requested. Based on the foregoing, this assignment is rendered moot.

Eagle asserts in its fourth assignment of error that the jury verdict and the judgment entered on the breach-of-contract and interference-with-contract claims were against the manifest weight of the evidence and contrary to law. This assignment is also moot.

## Conclusion

We hold that the limitations period within the dealer agreement was valid and applicable to bar the assertion of the contract claims in the present dispute. Further, we hold that Universal was not entitled to damages on its claim for tortious interference with contract. Accordingly, we reverse the trial court's judgment in Universal's favor and enter final judgment as a matter of law in favor of Eagle.

*Judgment reversed.*

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.