OPINION
Carolyn Knepler appeals from a judgment entered pursuant to a jury verdict in the Montgomery County Court of Common Pleas and from the court's refusal to set aside that verdict.
The facts which led to the filing of the complaint are as follows.
In 1984, while living in Alaska with her husband and their children, Knepler hurt her feet when she jumped into a swimming pool. An x-ray of her left foot revealed a small spur on her heel and, of incidental note, the presence of an os trigonum. An os trigonum is a bony structure that protrudes from the back of one of the bones in the ankle. Only a small percentage of people have an os trigonum. After the accident, Knepler suffered from pain in her feet and was treated for heel spurs.
By 1988, Knepler and her family were stationed at Wright Patterson Air Force Base ("WPAFB"), where she continued to seek treatment for pain in her left foot. After attempting numerous conservative courses of treatment, Dr. Joseph Agostinelli of WPAFB referred Knepler to Dr. John Cowden, a podiatrist, for surgery to remove her heel spurs. Dr. John Liebenthal was a resident working with Dr. Cowden at that time.
In late February 1988, Drs. Cowden and Liebenthal examined Knepler and, based upon her history, her x-rays, and their examination, they determined that the pain in Knepler's left foot was caused by a symptomatic os trigonum as well as by heel spurs. The presence of an os trigonum is not problematic in itself, but it can become problematic if the bone is fractured or pulls away from the surrounding tissue, which can happen as a result of trauma to the foot. Drs. Cowden and Liebenthal recommended the removal of Knepler's os trigonum as well as the heel spurs in her left foot. According to Drs. Cowden and Liebenthal, they each discussed alternative treatments with Knepler and the material risks associated with the surgery. Knepler denied that alternatives had been discussed with her, and she claimed that she had not been provided with enough information to give an informed consent. A copy of a Consent to Surgery form, signed by Knepler, was introduced into evidence. The form contained an explanation of the proposed procedure and some of the risks associated with the procedure, but Knepler claimed that the form had been blank when she had signed it.
Knepler's surgery was uneventful. Over time, however, the pain in her foot did not abate as expected and she continued to seek treatment. By this time, Knepler no longer lived in the Dayton area, and she was treated by Air Force doctors in Texas for her pain. These doctors ultimately determined that Knepler had developed a bulbous neuroma of the sural nerve, which runs through the outer portion of the ankle and controls sensation in the outer top portion of the foot and the small toe. Such a neuroma can result from a trauma or injury to the nerve or from entanglement of the nerve in scar tissue following a surgery such as Knepler's. To alleviate Knepler's pain, the Air Force doctors performed surgery in 1992 to deaden the nerve and to tack it to a nearby bone to prevent further irritation from superficial injuries or scar tissue. According to Knepler, this surgery still did not relieve her pain and, based on subsequent conversations with new doctors, she gave up hope that her condition would ever improve.
Knepler and her husband, Mark, filed a complaint for medical malpractice, breach of contract, fraud, and "unlawful application of force" against Dr. Cowden in February 1990. Knepler voluntarily dismissed this action in July 1993 and refiled it in July 1994. Knepler subsequently amended the complaint to include her children as plaintiffs and to include Dr. Liebenthal as a defendant. The doctors filed motions for summary judgment in December 1997. The trial court granted the doctors' motions for summary judgment with respect to the breach of contract, fraud, and unlawful application claims, but denied the motions in all other respects. The trial court also denied a motion for summary judgment made only on behalf of Dr. Liebenthal which had argued that the Knepler children's claims against him had been barred by the statute of limitations.
The case proceeded to a jury trial on August 3 through 18, 1998. The jury returned a verdict in favor of Drs. Cowden and Liebenthal, and the trial court journalized this verdict on September 15, 1998. Knepler filed a Motion for New Trial and/or Judgment Notwithstanding the Verdict, and the trial court overruled that motion.
Knepler raises fourteen assignments of error on appeal, and Dr. Liebenthal raises one assignment of error on cross-appeal. Where it facilitates our discussion, we will address some of Knepler's assignments together.
I. THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION REGARDING ITS RULINGS ON APPELLANT'S INSTRUCTIONS AND INTERROGATORIES TO BE SUBMITTED TO THE JURY.
Although this assignment of error states an objection to the trial court's failure to give certain instructions to the jury and to submit certain interrogatories to the jury, Knepler's argument relates only to the interrogatories. Knepler claims that the trial court was required by Civ.R. 49(B) to submit her proposed interrogatories to the jury because they related to determinative issues in the case and would have tested the credibility of the general verdict.
Civ.R. 49(B) provides, in pertinent part:
 The court shall submit written interrogatories to the jury * * * upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury * * *. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.
The rule contemplates the exercise of the court's discretion in submitting interrogatories because it discusses the court's "action upon the requests" and because it requires interrogatories to be "directed to * * * determinative issues." The trial court acts within its discretion in refusing to submit a proposed interrogatory that is not appropriate in form or content or that is ambiguous, confusing, redundant, or otherwise legally objectionable. Freeman v. Norfolk W. Ry. Co., Inc. (1994),69 Ohio St.3d 611, 613. The supreme court has defined proper interrogatories as "those that will lead to `findings of such a character as will test the correctness of the general verdict returned and enable the court to determine as a matter of law whether such verdict will stand.'" Id. at 613-614. An interrogatory that is merely probative or evidentiary in nature, and does not touch on an ultimate issue, is improper. Id. at 614.
Knepler proposed eleven interrogatories. Several of these interrogatories were duplicative of other interrogatories submitted to the jury. For example, Interrogatory #5 asked whether Dr. Cowden or Dr. Liebenthal had obtained Knepler's informed consent for surgery. That interrogatory addressed the same ultimate issue as Knepler's proposed interrogatories about whether the doctors had disclosed the material risks of the surgery and the alternatives to surgery and whether specified risks had been disclosed. Many of Knepler's other proposed interrogatories were evidentiary in nature and did not touch upon ultimate issues in the case. Specifically, the proposed interrogatories addressed to whether Knepler had, in fact, ever fractured her os trigonum, when she had fractured it, whether it had been symptomatic when she was referred to Dr. Cowden, and whether she had been having problems with her os trigonum prior to surgery were all inappropriate evidentiary questions. Moreover, the presence of an os trigonum in Knepler's foot, about which she proposed an interrogatory, was never in dispute. The trial court did not abuse its discretion in refusing to give any of these interrogatories.
Because Knepler has not presented an argument with respect to the trial court's alleged error in failing to give requested jury instructions, as she was required to do pursuant to App.R. 16(A) (7), we will not address this issue. App.R. 12(A) (2). We further note that Knepler admitted in her brief that "the denial of the requested instructions submitted by Plaintiff [was] more than likely not critical to Appellant's appeal."
The first assignment of error is overruled.
II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ANY DISCRETION THAT IT HAD BY INSTRUCTING THE PLAINTIFF'S ATTORNEY THAT HE COULD NOT MENTION OR ARGUE THE MISSING X-RAYS.
The second assignment of error relates to Knepler's pre-operative x-rays, which were missing at the time of trial. Knepler asserts that, because the x-rays had been most recently in Dr. Cowden's possession and because they would have demonstrated that she "did not have an os trigonum that needed to be operated upon," she should have been allowed to argue to the jury "that Dr. Cowden deliberately got rid of the x-rays because the x-rays would prove Plaintiff's case beyond a reasonable doubt." Knepler claims that the trial court abused its discretion in refusing to allow such an argument.
Knepler's contention that Dr. Cowden had destroyed the x-rays was not supported by any evidence. Knepler testified that she had delivered the x-rays to Dr. Cowden and that she had unsuccessfully tried to get them back from him after surgery. The doctors stipulated that Knepler had not been the last one in possession of the x-rays but, otherwise, what had happened to them was unknown. The trial court ruled that the fact that the x-rays were missing, without more, was not enough to permit the "loop of inference that [Dr. Cowden] got rid of them somehow deliberately, maliciously." We agree. Knepler's theory of what had happened to the x-rays was no more than speculation, and the trial court properly excluded it.
The second assignment of error is overruled.
III. THE DEFENSE COUNSEL COMMITTED MISCONDUCT DURING HIS CLOSING ARGUMENT TO THE JURY.
IV. THE TRIAL COURT ERRED BY NOT GRANTING A NEW TRIAL BASED ON THE MISCONDUCT OF THE DEFENSE COUNSEL IN HIS CLOSING ARGUMENT.
Knepler claims that a manifest miscarriage of justice resulted from the trial court's failure to admonish defense counsel about a comment made during his closing argument. Knepler recognizes that we must address this issue under the standard of review for plain error because she did not object to the comment at trial.
Defense counsel made the comment in question as he explained to the jury that the existence of an injury does not, in itself, prove that someone acted negligently. In other words, counsel was arguing to the jury that a patient can suffer a bad result even if the physician did nothing wrong. In this context, counsel made reference to a speech given to members of his law firm years earlier by Ohio Supreme Court Justice Andy Douglas in which Douglas expressed concern over the philosophy of some other members of the supreme court that "if someone was hurt somehow, there must be someone else that was responsible for that." Counsel then went on to discuss what must be shown to establish negligence in a medical malpractice case in Ohio.
Counsel is afforded wide latitude in addressing the jury during closing argument. Campbell v. Warren Gen. Hosp. (1994),105 Ohio App.3d 417, 423; Stelma v. Juguilon (1992), 73 Ohio App.3d 377,386. A judgment will not be reversed on the grounds of misconduct in closing arguments unless the circumstances are so reprehensible as to constitute prejudice. Hitson v. Cleveland
(Dec. 13, 1990), Cuyahoga App. No. 57741, unreported. In our view, counsel's comments were not improper and did not prejudice Knepler. The view attributed to Justice Douglas by counsel is consistent with the legal requirement that the plaintiff in a negligence action must prove not only injury, but that the injury was proximately caused by the defendant's negligence. Moreover, even if we were to assume, arguendo, that the comment was improper, we would be unpersuaded that counsel's isolated comment deprived Knepler of a fair trial.
The third and fourth assignments of error are overruled.
V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ANY DISCRETION THAT IT HAD BY PERMITTING THE APPELLEE'S ATTORNEY TO INTRODUCE INTO EVIDENCE A PHOTOCOPY OF THE CONSENT FORM.
VI. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ANY DISCRETION THAT IT HAD BY INSTRUCTING THE APPELLANTS' ATTORNEY THAT HE COULD NOT MAKE ANY REFERENCE OR ARGUE ANY INFERENCES REGARDING THE LOSS OF THE ORIGINAL CONSENT FORM, OTHER THAN THE FACT THAT IT WAS LOST.
Under the fifth and sixth assignments of error, Knepler argues that the doctors should not have been permitted to introduce a photocopy of her Consent to Surgery form, rather than the original. The original was missing at the time of trial. Knepler also contends that she should have been allowed to argue to the jury that there was "good reason to suspect that Dr. Cowden may have destroyed the [original] consent form."
Evid.R. 1003 provides that a duplicate is admissible to the same extent as an original unless there is a genuine question as to the authenticity of the original or unless, under the circumstances, it would be unfair to admit the duplicate in lieu of the original. The photocopy of the consent form that was introduced in this case falls within the definition of a "duplicate" set forth in Evid.R. 1001(4).
Knepler apparently contends that it was unfair under the circumstances to admit the duplicate because of the "question as to whether or not the original consent form was lost or was destroyed by Dr. Cowden." The trial court properly refused to exclude the photocopied consent form on this basis because there was no evidence to support wrongdoing by Dr. Cowden. In fact, defense counsel represented to the court that his firm was responsible for the loss of the original document. For the same reason, the trial court properly precluded Knepler from suggesting to the jury that Dr. Cowden had destroyed the document.
Knepler also seems to argue that the photocopy should have been excluded because the authenticity of the original was in dispute. We disagree. Although there was conflicting evidence about when the form was completed and by whom, there was no suggestion that the photocopy differed in any way from the original form, as it would have appeared in Dr. Cowden's records, or that the original form would have been more probative of the issues in dispute.
The fifth and sixth assignments of error are overruled.
VII. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ABUSED ITS DISCRETION REGARDING ITS DECISION PERTAINING TO USE OF PLAINTIFF'S THIRD PEREMPTORY CHALLENGE.
Knepler contends that her due process rights were violated when the trial court refused to allow her to use a peremptory challenge on a member of the jury pool who had not yet been seated as a juror. We infer from Knepler's discussion under this assignment of error and from our review of the record that the prospective juror in question was Mr. Hugh Shellabarger. Shellabarger was seated on the jury after Knepler's attorney had passed on her last peremptory challenge when the doctors used their last peremptory challenge to excuse another juror.
Civ.R. 47(B) provides that each party may peremptorily challenge three jurors, that the parties shall exercise their challenges alternately, starting with the plaintiff, and that the "failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge." The rule further provides:
 A prospective juror peremptorily challenged by either party shall be excused and another juror shall be called who shall take the place of the juror excused and be sworn and examined as other jurors. The other party, if he has peremptory challenges remaining, shall be entitled to challenge any juror then seated on the panel.
(Emphasis added.)
The record indicates that Knepler used her first peremptory challenge and passed on her second. Then, after the defendants had exercised their first two peremptory challenges, Knepler sought to use her third challenge on Shellabarger, who was next in line but had not yet been seated on the jury. When the court indicated that Knepler could use her peremptory challenge only on one of the eight seated jurors, Knepler waived her third challenge. The defense then used its third challenge on another member of the jury, and Shellabarger moved onto the panel.
Because Civ.R. 47(B) discusses peremptory challenges in the context of jurors who have been passed for cause, seated on the panel, and sworn, the trial court did not err in concluding that the use of such challenges is limited to seated jurors, not prospective jurors, even if prospective jurors have been questioned by the court or the attorneys. Moreover, Civ.R. 47(B) clearly does not provide an absolute right to pass on the final jury panel. "Even if the constitution of the jury panel changes, a party may exercise a peremptory challenge only if that party has peremptory challenges remaining." Hileman v. Kramer (Dec. 29, 1995), Montgomery App. No. 15066, unreported. Knepler's due process rights were not violated by her inability to peremptorily challenge Shellabarger after he had moved onto the jury panel.
The seventh assignment of error is overruled.
VIII. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR PERTAINING TO ITS RULING REGARDING DR. BENDER'S INDEPENDENT MEDICAL EXAMINATION.
Knepler claims that the trial court erred in limiting her use of the medical report prepared by Dr. Thomas Bender and in failing to instruct the jury about the defendants' right, pursuant to Civ.R. 35, to obtain an independent medical examination.
The facts underlying the dispute over Dr. Bender's medical examination of Knepler and his report about that examination are somewhat difficult to ascertain from the record because the trial court's Civ.R. 35(A) order for examination was apparently issued in a previous case and because some of the discovery materials are not in the record. It appears, however, that Dr. Bender was hired by Dr. Cowden in 1991 to conduct a physical examination of Knepler pursuant to Civ.R. 35(A) and that Dr. Bender prepared a written report based upon that examination. Dr. Bender was initially identified on Dr. Cowden's witness list as a potential expert witness, but Dr. Cowden subsequently decided to use Dr. Bender "only as an expert retained or specially employed in preparation for trial." Pursuant to Civ.R. 26(B) (4) (a), the facts known and opinions held by an expert retained or specifically employed in anticipation of litigation or preparation for trial are not discoverable by another party except in limited circumstances. Such circumstances were not alleged in this case.
Despite having allegedly been informed of Dr. Cowden's intended use of Dr. Bender, Knepler sought to depose Dr. Bender. Knepler also included Dr. Bender on her list of expert witnesses, although he was apparently unwilling to serve as such. Dr. Cowden filed a motion for a protective order prohibiting Knepler from further contact with Dr. Bender and from calling him as an expert witness. The trial court resolved the issue by prohibiting Knepler from deposing Dr. Bender but permitting her to use his report with certain redactions. Specifically, the trial court redacted the sections in which Dr. Bender had expressed an opinion about Knepler's condition and all indications that Dr. Bender had been hired by the defendants. The court also prohibited Knepler from introducing evidence that Dr. Bender had been hired and paid by Dr. Cowden.
In our view, the trial court's resolution of the dispute over Dr. Bender's opinion and report was reasonable. Civ.R. 26(B) (4) (a) closely circumscribes the discovery of facts known or opinions held by an opposing party's expert if that expert is not expected to testify but has instead been retained to assist with trial preparation. Thus, once Dr. Cowden had indicated that he did not intend to call Dr. Bender at trial, Knepler had no right pursuant to Civ.R. 26(B) (4) to discover his opinions, much less to present those opinions to the jury. Civ.R. 35 provides for the court-ordered examination of a party whose physical condition is at issue at the request of another party. Civ.R. 35(B) states that a person who is examined by order of the court may obtain a copy of the written report submitted by the examiner. It does not create any right on the part of the person examined to present the results of such an examination or the conclusions drawn therefrom to a jury. The injured party is free to obtain its own experts for this purpose. As such, the trial court did not err in limiting Knepler's use of Dr. Bender's report.
Knepler also argues that the trial court should have taken judicial notice of Civ.R. 35 and should have instructed the jury that the defendants had had the right to request an independent medical examination. It is unclear to us what purpose such an instruction would have served except to invite improper speculation about why such evidence had not been presented at trial. The trial court did not err in refusing to give the requested instruction.
The eighth assignment of error is overruled.
IX. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING APPELLANT'S CLAIMS FOR UNLAWFUL APPLICATION, BREACH OF CONTRACT AND FRAUD.
Knepler claims that the trial court erred in granting summary judgment on her claims for "unlawful application of force," breach of contract, and fraud. Knepler asserts that genuine issues of material fact existed as to whether Dr. Cowden had breached her contract with him by allowing Dr. Liebenthal to perform part of her surgery and whether both doctors had misrepresented or concealed the fact the Dr. Liebenthal had participated in the surgery. Knepler further contends that Dr. Cowden misrepresented her need for surgery. The claim for unlawful application of force was apparently based upon Knepler's belief that her consent was void because she had not been fully informed about the risks associated with the procedure. The trial court did not make any specific findings when it granted these portions of the doctors' motions.
In the doctors' motions for summary judgment, they pointed out that the "unlawful application of force" is not a claim recognized under Ohio law. On this basis, the doctors asserted that Knepler's complaint failed to state a claim upon which relief could be granted to the extent that it sought compensation for "unlawful application." Knepler's response did not address whether such a claim existed under Ohio law; it merely asserted that she had not been fully informed of the risks of the procedure and that her alleged consent had therefore been void. Because "unlawful application of force" is not a recognized cause of action, the trial court properly granted summary judgment on this portion of Knepler's claim. Moreover, we note that the trial court refused to granted summary judgment on the issue of informed consent, which seems to have been the basis of Knepler's unlawful application claim.
Knepler also claims that summary judgment was improper on her breach of contract claim because the jury should have been allowed to determine whether Dr. Cowden had breached his contract with her. It is well-settled that the misconduct of medical professionals constitutes malpractice regardless of whether such misconduct is framed in terms of negligence or breach of contract.Harrell v. Crystal (1992), 81 Ohio App.3d 515, 529; Robb v.Community Mut. Ins. Co. (1989), 63 Ohio App.3d 803, 805; Muir v.Hadler Real Estate Mgmt. Co. (1982), 4 Ohio App.3d 89, 90. Thus, as a matter of law, Knepler's claim sounded in professional negligence rather than contract, and she was not entitled to reach the jury on her breach of contract claim.
The elements of fraud under Ohio law are: 1) a representation or a concealment of a fact where there is a duty to disclose; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying upon it; 5) justifiable reliance upon the representation or concealment; and 6) a resulting injury proximately caused by the reliance. Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. Knepler contends that there was a genuine issue of material fact regarding fraud, which was separate and distinct from her malpractice claim. Specifically, she claims that there was a genuine issue of material fact as to whether Dr. Liebenthal's participation in the surgery was misrepresented or concealed and whether Dr. Cowden's statement that she needed surgery on her os trigonum was a misrepresentation of a material fact.
Knepler did not contend that Dr. Cowden recommended surgery on her os trigonum knowing that such surgery was unnecessary; rather, she challenged his medical diagnosis that such surgery was warranted. Whether Dr. Cowden's assessment that Knepler needed surgery on her os trigonum fell within the standard of care was at the heart of Knepler's malpractice claim. If his diagnosis was unfounded, then he had committed malpractice, not fraud. Because Knepler presented no evidence that Dr. Cowden knew his diagnosis was wrong when he discussed it with her, there was no genuine issue of material fact that he had knowingly misrepresented her condition to her.
With respect to Dr. Liebenthal's participation in the surgery, the evidence submitted pursuant to Civ.R. 56(C) revealed that Knepler had signed consent forms permitting Dr. Cowden to use assistants, that she had known of Dr. Liebenthal's involvement with her case before surgery, and that Dr. Liebenthal's name had appeared on the operative report. Knepler identified no specific instance in which Dr. Liebenthal's involvement was affirmatively misrepresented to her, and there is no indication that the doctors actively concealed Dr. Liebenthal's involvement. In fact, the evidence, including the consent forms, supports the opposite conclusion. The trial court correctly concluded that Knepler had not created a genuine issue of material fact as to whether her doctors had engaged in fraud.
Knepler relies on Gaines v. Preterm-Cleveland, Inc. (1987),33 Ohio St.3d 54, for the proposition that a claim for fraud can be separate and distinct from a claim for medical malpractice arising from the same transaction. In Gaines, the doctor allegedly told his patient that he had removed an intrauterine device ("IUD") as she had requested when, in fact, he had not done so. Over three years later, the patient discovered that the IUD had not been removed and that it had perforated her uterus. Under these circumstances, the supreme court concluded that a doctor's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relied to her detriment, could give rise to a cause of action in fraud independent from an action in medical malpractice. Gaines is clearly distinguishable from this case. In Gaines, the doctor allegedly misrepresented the fact that he had performed a medical procedure. Here, Knepler's claimed misrepresentations related to the need for and the execution of the medical procedure and were thus inextricably tied to her malpractice claim. As such, Knepler was not entitled to pursue her fraud claim separate from her malpractice claim.
Knepler's ninth assignment of error is overruled.
X. THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
Knepler asserts that the trial court erred in overruling her motion for summary judgment. Because it appears from the record that Knepler did not file a motion for summary judgment, this assignment of error is overruled.
XI. THE TRIAL COURT ERRED BY NOT GRANTING PLAINTIFF'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF ALL THE EVIDENCE REGARDING THE ISSUES OF NEGLIGENCE ON THE PART OF DR. COWDEN AND DR. LIEBENTHAL[.]
XII. THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT'S MOTION FOR NEW TRIAL AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT.
Knepler claims that she was entitled to a directed verdict or to a judgment notwithstanding the verdict because the surgery on her os trigonum clearly was not warranted and caused further injury and because the doctors deviated from the standard of care. She claims that, insofar as the doctors admitted to these failures, she was entitled to judgment as a matter of law.
The standard of review for a motion for judgment notwithstanding the verdict is the same as that for a directed verdict. Civ.R. 50; Texler v. D.O. Summers Cleaners ShirtLaundry Co., Inc. (1998), 81 Ohio St.3d 677, 679. Construing the evidence most strongly in favor of the party against whom the motion is directed, the motion must be overruled unless reasonable minds could reach no other conclusion but that, under the applicable law, the movant is entitled to judgment in his favor. Civ.R. 50; Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 137;Universal Windows Doors, Inc. v. Eagle Window Door, Inc.
(1996), 116 Ohio App.3d 692, 699.
Knepler's conclusions about the state of the record are overstated. For example, although the defendants admitted that the standard of care requires doctors to inform patients about the risks associated with surgery, they certainly did not concede that they had failed to provide such information. To the contrary, they testified that they had discussed the risks of surgery with Knepler, and they provided documentary evidence-her consent to surgery-in support of that testimony. The jury was required to weigh this testimony against Knepler's testimony that the consent form had been blank when she had signed it and that the risks had not been discussed with her. The jury was free to credit the testimony of the doctors over that of Knepler, and it obviously did so. Likewise, Drs. Cowden and Liebenthal admitted that they had not pursued conservative treatment alternatives with Knepler, but they did not admit that their failure to do so had deviated from the standard of care. There was ample evidence that Dr. Agostinelli had attempted numerous alternative treatments for heel spurs before referring Knepler to Dr. Cowden, that the alternative treatments for os trigonum mirrored those for heel spurs, and that a doctor to whom a patient is referred need not retry all of the conservative treatments attempted by the referring doctor to comply with the standard of care. There was also testimony that Knepler had been eager to proceed with surgery and that a doctor should let a patient decide among the various options available to her.
In sum, the "admissions" cited in Knepler's brief presuppose the jury's complete acceptance of Knepler's version of the events preceding her surgery and of her medical condition. The jury was not required to accept Knepler's version. Rather, it was entrusted to assess and weigh the credibility of the witnesses. Given that much of Knepler's testimony was contradicted by other witnesses and that some of her own experts did not believe that Drs. Cowden and Liebenthal had deviated from the standard of care, reasonable minds could certainly have differed as to whether she had proven her claims. Thus, the trial court did not err in overruling Knepler's motions for a directed verdict and for a judgment notwithstanding the verdict or new trial.
The eleventh and twelfth assignments of error are overruled.
XIII. THE COURT COMMITTED ERROR PERTAINING TO ITS DECISION DENYING PLAINTIFFS' DOCTOR, DR. THOMAS[,] TO DO AN IN COURT EXAMINATION IN FRONT OF THE JURY.
Knepler claims that one of her expert witnesses, Dr. Stephen Thomas, should have been permitted to examine her foot in front of the jury.
It is undisputed that the doctors' attorney deposed Dr. Thomas on July 20, 1998, and that the trial began on August 3, 1998. In his deposition, Dr. Thomas indicated that he was unable to comment on the permanency of Knepler's injuries because he had not examined her in over nine years, so his testimony was confined primarily to the standard of care. Knepler's attorney sought to have Dr. Thomas reexamine Knepler the night before his trial testimony or to examine her in front of the jury because "it wouldn't take over probably five or ten minutes for him to do the things that are important." The doctors objected on the ground that they would be prejudiced by not having an adequate opportunity to discover the witness's opinion. Knepler's attorney offered no explanation why Dr. Thomas had not conducted an examination or been supplied with Knepler's medical records prior to the July 20 deposition. The trial court refused to allow Dr. Thomas to examine Knepler in front of the jury or to allow any reference to the results of Dr. Thomas's mid-trial examination of Knepler. The Ohio Rules of Civil Procedure and Rules of Evidence clearly do not provide for the type of examination before a jury to which Knepler claims she was entitled. The sole purpose for the request seems to have been to obviate Knepler's unexplained failure to provide her expert with competent evidence upon which to base an opinion prior to trial. Conducting an examination so that one may render an expert opinion falls squarely within the purposes of discovery, and if Knepler wanted to introduce such testimony, she should have obtained such an examination in a timely fashion. The trial court properly rejected Knepler's request. It also properly refused to allow any reference to the examination conducted at Knepler's behest during the trial.
The thirteenth assignment of error is overruled.
XIV. THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE DUE PROCESS RIGHTS OF THE APPELLANT DURING THE QUESTIONING OF WITNESSES.
Under this assignment of error, Knepler objects to four unrelated rulings of the trial court. First, Knepler claims that the trial court should not have sustained defense counsel's objection to her attorney's reference to a term used in deposition testimony. Second, Knepler contends that the trial court should not have permitted Dr. Steven Lakamp to base his opinions on facts gleaned from depositions that had not been admitted into evidence. Third, Knepler argues that the trial court should not have prohibited her from questioning Dr. Liebenthal about whether Mr. Knepler had been in the examining room at Knepler's preoperative examination. Fourth, Knepler claims that she should have been allowed to question Dr. Liebenthal about certain inconsistencies between his deposition and trial testimonies.
Throughout the trial, Knepler's attorney attempted to cross-examine witnesses about the depositions they had read of other people involved in the case, and the trial court repeatedly ruled that the manner in which he was attempting to use those depositions was improper. Knepler's first argument under this assignment of error relates to one such instance. Knepler's attorney asked Dr. Lakamp whether Dr. Agostinelli had used the term "resident's fool" to describe an os trigonum, and the court sustained an objection to the form of the question. The attorney's use of the deposition testimony in that instance was improper, and the information he sought to obtain was irrelevant. The trial court did not err in prohibiting this type of questioning.
Dr. Lakamp testified that he had reviewed Knepler's medical records from the Air Force, Dr. Cowden, and St. Elizabeth's Hospital, as well as the depositions of the Kneplers and several doctors, including Drs. Cowden and Liebenthal, in preparation for testifying in the case. Defense counsel then asked Dr. Lakamp to briefly summarize the facts of the case as he understood them, with the intent to follow up with hypothetical questions based on those facts. Knepler's attorney objected on the grounds that he had not been permitted to "get into depositions of witnesses" in his case. The trial court pointed out that it had merely prohibited Knepler's attorney from "having a witness comment practically page by page on what another witness said in a deposition." In other words, the trial court's previous rulings related to the manner in which Knepler's attorney had attempted to use the depositions, not the use of the depositions themselves. Moreover, the jury was in a position to assess the accuracy of the facts recited by Dr. Lakamp and upon which he based his opinion. The trial court did not err in permitting this testimony.
With respect to her cross-examination of Dr. Liebenthal, Knepler contends that the trial court "denied [her] attorney's questioning of Dr. Liebenthal regarding the presence of Mr. Knepler in the examining room" during a preoperative examination. This statement misstates the nature of the questioning. Knepler's attorney questioned Dr. Liebenthal about whether he had ever met Mr. Knepler, and Dr. Liebenthal testified that he did not recall having met Mr. Knepler. Knepler's attorney then inartfully tried to point out that Mr. Knepler did recall having met Dr. Liebenthal at his wife's preoperative examination and repeatedly asked Dr. Liebenthal whether he knew of any reason why Mr. Knepler would be lying. Defense counsel's objections to the questions about Mr. Knepler's truthfulness were properly sustained. Mr. Knepler's testimony was not inconsistent with Dr. Liebenthal's testimony and, in any event, the veracity of the witnesses was a question for the jury.
Finally, Knepler contends that the trial court erred in prohibiting her from exploring inconsistencies between Dr. Liebenthal's trial testimony and his deposition. In support of this assignment, Knepler cites the following exchange, which followed Dr. Liebenthal's description of what the doctors had observed during Knepler's preoperative examination.
 ATTORNEY WEINER: If I told you to take the time and read your deposition from two years ago and it didn't say a thing about reduced eversion or anything at all about range of motion or anything at all about crepitus, would I be telling the fact?
ATTORNEY McCARTNEY: Objection.
ATTORNEY WEINER: As it is —
COURT: Sustained.
The question asked by Knepler's attorney was improper insofar as counsel was testifying about the content of the deposition rather than questioning the witness about it, and the trial court correctly sustained the objection. The trial court did not prohibit Knepler's attorney from questioning Dr. Liebenthal about his deposition testimony; it merely required Mr. Weiner to phrase his questions properly. For whatever reason, Mr. Weiner moved on to another subject rather than rephrasing his question.
The fourteenth assignment of error is overruled.
Because we have overruled all of Knepler's assignments of error and will affirm the judgment of the trial court, we need not address Dr. Liebenthal's cross-assignment of error, which related to the denial of his motion for summary judgment.
The judgment of the trial court will be affirmed.
FAIN, J. and KOEHLER, J., concur.
(Hon. Richard N. Koehler sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Dan D. Weiner
Felix J. Gora
Paul W. McCartney
Hon. David A. Gowdown