DECISION AND JUDGMENT ENTRY
Appellants, Kenneth S. Clark and Jennifer v. Clark [hereinafterClarks], appeal the decision of the Washington County Court of Common Pleas, granting judgment on the pleadings to the appellee, Wheeler 
Clevenger Oil Co., Inc. [hereinafter WC Oil]. We reverse.
 Statement of the Case
In 1994, the Clarks became operators of a gasoline service station on Pike Street in Marietta, Ohio, owned by Robert L. Baker and Pauline M. Baker [hereinafter Bakers]. On September 1, 1994, the Clarks entered into a "Dealer's Agreement" with WC Oil to be an exclusive Sunoco dealership. Shortly thereafter, also in September 1994, the Bakers granted WC Oil the exclusive right to deliver gasoline and fuel oil products to this Pike Street service station. In March 1995, the dealership became an Exxon distributor. At about the same time, WC Oil began to charge the Clarks an extra one and four-tenths cent per gallon surcharge on each gallon of gas delivered to them. This extra charge later increased to as much as four and eight-tenths cents per gallon. In addition, WC Oil began to charge rent for the Exxon signage installed at that station by WC Oil. In February 1997, the Clarks abandoned the operation of the station to the Bakers, who began to operate the station. On November 17, 1997, the Bakers and the Clarks sued WC Oil in the Washington County Court of Common Pleas, seeking damages for the gasoline overcharges, sign rental charges, and the loss of profits as the result of the overcharges. Their complaint included a claim for punitive damages. WC Oil counter-claimed for accounts claimed past due, for breach of the Dealer's Agreement between it and the Clarks, breach of an agreement between it and the Bakers, and for damages to its business reputation.
On February 10, 1998, WC Oil moved for judgment on the pleadings against the Clarks. WC Oil claimed that the Dealer's Agreement between it and the Clarks contained a limitation clause that required any claim under the contract to be filed within six months after that claim arose. The Clarks admitted, in their complaint, to ending their operation of the station in February 1997. Therefore, argues WC Oil, the Clarks would have been required to file any claim in October 1997 or be time barred by this six month clause. Hence, concluded WC Oil the November 17, 1997 complaint filed by the Clarks must be dismissed as untimely. The trial court granted WC Oil's motion on March 16, 1998, and the Clarks filed their timely appeal.
The March 16, 1998 judgment entry did not resolve the claims raised by the Bakers or any of the counterclaims raised by WC Oil. We found, therefore, that this judgment entry was not a "final appealable order" under Civ.R. 54. For that reason, we dismissed the appeal. See Clark v.Wheeler and Clevenger Oil Co. (Dec. 4, 1998), Washington App. No. 98CA17, unreported. On March 10, 1999, the trial court supplemented its March 16, 1998 order by finding that "there is no just reason for delay" under Civ. R. 54 (B). The Clarks again appealed from that judgment and order of the trial court dismissing their action on the pleadings. Appellants raise a single assignment of error for our review:
 THE TRIAL COURT ERRED IN GRANTING THE MOTION OF THE DEFENDANT-APPELLEE FOR JUDGMENT ON THE PLEADINGS (DECISION OF TRIAL COURT).
 OPINION I
We must first identify the applicable standard of review. Appellee WC Oil urges us to apply an abuse of discretion standard, offering as authority S.E.R.B. v. Pickaway D.H.S. (1995), 108 Ohio App.3d 322,670 N.E.2d 1010, and Gingo v. Ohio State Medical Bd. (1989),56 Ohio App.3d 111, 564 N.E.2d 1096. Both cases cited are appeals from a common pleas court review of an administrative ruling. Neither case cited by appellee as authority for its position is persuasive and both are clearly distinguishable from the present matter. The matter before us is a contract dispute, brought originally in the Washington County Court of Common Pleas, with no prior administrative hearing or ruling being involved.
Under Civ.R. 12 (C), dismissal is appropriate
 * * * where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true; and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.
State ex rel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565,570, 664 N.E.2d 931, 936. Thus, Civ.R. 12 (C) requires the trial court to determine that no material factual issues exist and that the movant is entitled to judgment as a matter of law. See Burnside v. Leimbach
(1991), 71 Ohio App.3d 399, 403, 594 N.E.2d 60, 62. Our standard of review, therefore, is de novo, which requires us to independently review the judgment to determine if it was properly granted as a matter of law.Midwest, supra. See Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 166,297 N.E.2d 113, 117; Becker v. McAninch (Dec. 2, 1998), Ross App. No. 98CA2450, unreported.
 II
Unlike a Civ.R. 12(B)(6) motion, the trial court may consider the complaint, as well as the answer and any counter-claims or cross claims, in reaching its decision on a motion under Civ.R. 12(C). Midwest, supra. In ruling on a Civ.R. 12 (C) motion, the pleadings must be construed liberally and in a light most favorable to the party against whom the motion is made, along with reasonable inferences drawn therefrom. SeeBurnside v. Leimbach, 71 Ohio App.3d at 402, 594 N.E.2d at 62; CaseWestern Reserve Univ. v. Friedman (1986), 33 Ohio App.3d 347, 348,515 N.E.2d 1004, 1005. However, the trial court may consider only the content of the pleadings and may not consider any evidentiary materials. See Burnside and Peterson, supra, and Hughes v. Robinson MemorialPortage Cty. Hosp. (1984), 16 Ohio App.3d 80, 474 N.E.2d 638. A trial court may not consider material outside the pleadings even where that material would establish that the court lacked jurisdiction over the matter. Pollack v. Watts (Aug. 10, 1998), Fairfield App. No. 97CA0084, unreported.
The Clarks, in their complaint, claimed a breach of a contractual agreement entered into between the Bakers, WC Oil, and a third entity, M.C. Development Company [hereinafter Baker Contract]. They attached a copy of this agreement to the complaint. WC Oil, in its answer and counterclaim attached a copy of a different contract, the Dealer's Agreement executed by WC Oil and the Clarks [hereinafter ClarkContract]. WC Oil cited to the Clark Contract, specifically the "limitations" clause of that contract, and argued that this clause barred the action by the Clarks by its terms. The "limitations" clause states: "* * * no civil or equitable action under the provisions of any Federal or State Law by either party against the other shall be brought unless instituted within six (6) months of the date upon which the transaction is based, * * *." WC Oil argues that no material issue of fact exists. Therefore, concludes WC Oil, it is entitled to judgment on the face of the pleadings submitted by the parties.
In their answer to the WC Oil counterclaim, however, the Clarks argued that the Clark Contract was rendered invalid and was of no further force and effect once the parties began dealing with Exxon, instead of Sunoco, in March 1995. The Clarks also noted that the Clark Contract contained no termination date, although the form agreement had blanks for the entry of such a date. Therefore, argue the Clarks, the contract was incomplete without this termination date and is unenforceable on this basis as well.
The statutory time limit for bringing an action in contract is fifteen years. R.C. 2305.06. However, Ohio law recognizes that the parties may agree to a shorter time limit. Universal Windows Doors, Inc. v. EagleWindow Door, Inc. (1996), 116 Ohio App.3d 692, 689 N.E.2d 56. Following the rule set forth in Burnside, supra, regarding limitation of what a court may consider in ruling on a Civ.R. 12 (C) motion, the trial court was permitted to consider only the specific contract clause set forth in the WC Oil answer, but not the actual contract, in ruling on the motion for judgment on the pleadings. Since the complaint did not address this contract, but instead relied upon the Baker Contract to argue a breach, the Clarks did not directly address this issue. The Clarks admit in their complaint that they returned the business to the Bakers in February 1997, more than six months before they filed their action. On the face of the pleadings, and on the pleadings alone, this contract provision might appear to bar any action by the Clarks.
However, by challenging the continued validity of the Clark Contract, the Clarks raised a question of material fact that could not be resolved without further examination of that agreement. Therefore, the trial court could not properly grant judgment on the pleadings with this issue left unresolved. See Burnside, supra. The trial court could not look beyond the pleadings to any evidentiary material, e.g. the attached contracts, and still grant judgment on the pleadings. See Pollack, supra.
Because the very validity of the Clark Contract is clearly an issue requiring resolution by the court, the court must conduct a proper examination of this contract. Civ.R. 12 (C) prohibits the court from conducting an examination of matters outside the pleadings in cases such as this. Therefore, the trial court cannot consider that contract in the context of a motion for judgment on the pleadings, as in the case here.
 III
Ohio law favors resolution of cases on their merits. Hopkins v.Quality Chevrolet, Inc. (1992), 79 Ohio App.3d 578, 583, 607 N.E.2d 914,918, citing Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, 454 N.E.2d 951, 952. "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies." Peterson v. Teodosio,34 Ohio St.2d at 175, 297 N.E.2d at 122.
This matter is, at heart, a contract dispute. If a contract is clear and unambiguous, then its interpretation is a matter of law. InlandRefuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322, 474 N.E.2d 271, 273-274. When reviewing the interpretation by the trial court of a clear and unambiguous contract, we must interpret the contract de novo. Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685.
The Clark Contract between the Clarks and WC Oil is, from the copy supplied, a two- page, single-spaced document with twenty-one clauses printed in very fine print. However, the essence of the contract is clear. Under the contract, WC Oil agreed to deliver Sunoco gasoline, motor fuels and related products to the Clarks at the Pike Street location. WC Oil agreed further to supply and maintain the gasoline dispensers, console equipment for the dispensers, and Sunoco signs. WC Oil also agreed to supply a credit card imprinter, and honor, under certain terms, sales made by the Clarks to Sunoco credit card holders.
The Clarks, in return, were required to purchase a minimum of seventy-five thousand gallons of gasoline per month, in minimum loads of eight thousand five hundred gallons. They were required to pay in cash upon delivery of the gasoline at a rate calculated from the "dealer's tankwagon price," a term not defined in the agreement. They were further required to purchase Sunoco products exclusively, not mix or "adulterate" the Sunoco gasoline with other products, nor sell products of any other oil company at the station. In addition, the Clarks were required to maintain the company signs and use Sunoco colors where possible in the decoration of the station. Any equipment at the station that was not supplied by WC Oil, but that was used for storage, dispensing products or advertising of products, was to be labeled with the "Sunoco" trademarks.
WC Oil would have us believe that this was a generic supply contract, hence the "limitations" clause would continue to apply even after the Clarks began to sell Exxon gasoline. To support its argument, they refer to the terms of the Baker Contract, attached to the complaint. In that agreement, the Bakers and WC Oil note that they "anticipate changing the location to Exxon."
Under the terms of the Clark Contract, the Clarks were required to purchase a minimum of seventy-five thousand gallons per month of Sunoco gasoline. One can conclude therefrom that this contract was to continue on a month-to-month basis until terminated, especially if we accept the argument of appellee WC Oil that the parties contemplated switching brands to Exxon at some point in the future. However, the specific terms of the agreement, calling for an exclusive Sunoco dealership at this location, would lead us to agree with the Clarks that the Clark Contract terminated when WC Oil began to deliver Exxon gasoline to the station. All parties seem to agree in their pleadings that this occurred sometime in March 1995.
True, WC Oil, not Sunoco, is the supplier under this agreement, and gasoline is essentially a commodity. From the face of the Clark Contract, however, this is clearly an exclusive dealership agreement with an agent of Sunoco. The intent of the parties to the Clark Contract was to allow the Clarks to become Sunoco gasoline dealers, with all the benefits and responsibilities that might inure to them, as a result of their carrying the flag of a national gasoline brand. A Sunoco dealership is obviously different from an Exxon dealership. Just as the Coca-Cola brand is different from the Pepsi brand of soda, or as Ford is from Chevrolet.
We need not consider the relative merits of Sunoco and Exxon dealership contracts. The Clarks have clearly met their burden of establishing a material fact in dispute, that is, the validity, or invalidity of the Sunoco Dealer's Agreement, the Clark Contract, once the service station became an Exxon dealership in March 1995. While it is true that the limitation clause in the Clark Contract would operate to bar any claims that arose during the term of that agreement, that is, before March 1995, the claims raised by the Clarks all appear to arise from events that occurred after the station became an Exxon dealership in March 1995. The Clarks seem to have a reasonable basis for their belief that the Sunoco Dealer's Agreement, along with the "limitation clause" therein, terminated at that point. Claims relating to surcharges for Exxon gasoline, and charges on Exxon sign rental, as well as any other claims arising after March 1995, would not have been time-barred under the expired Sunoco Dealer's Agreement, if it is determined that the Clark Contract did indeed expire in Match 1995. The threshold issue and material fact in dispute, therefore, is the validity, or lack thereof, of this contract after March 1995.
We need not determine the nature of any agreement that existed after that point. It is enough for us to determine the existence of a dispute over the continued existence of this Dealer's Agreement, the Clark Contract, after March 1995. The existence of that disputed material fact precludes judgment on the pleadings in the court below.
Accordingly, we REVERSE the judgment of the trial court and REMAND for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Opinion, the March 10, 1999 Judgment Entry of the Washington County Court of Common Pleas is reversed. This case is remanded to that trial court for further proceedings in accordance with the law and this opinion. It is ordered that the appellants recover of the appellee costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered a that special mandate issue out of this court directing the Washington County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Only with Opinion.
Abele, J.: Dissents.
 _____________________ David T. Evans, Judge