THE STATE OF OHIO, APPELLEE, *v.* DEAN, APPELLANT.

(No. 214—Decided May 29, 1953.)

*Mr. Raymond Bradford,* prosecuting attorney, and *Mr. Forrest E. Ely,* for appellee.

*Mr. Hugh C. Nichols, Mr. B. N. West* and *Mr. John L. Watson,* for appellant.

Ross, J.   In this appeal on questions of law from a judgment of the Court of Common Pleas of Clermont County, this court is called upon to pass upon assigned

errors alleged to have occurred in the trial and sentence of the defendant on an indictment charging that she did "willfully, purposely, and by means of poison kill and murder one Hawkins Dean, by then and there knowingly, purposely, and unlawfully administering, and causing to be administered to the said Hawkins Dean, a large quantity of a certain deadly poison, called arsenic trioxide, with the intent willfully, purposely, and by means of poison, the said Hawkins Dean to kill and murder, and by reason of said poison administered on August 5, August 6, August 19 and on August 21, 1952, that the said Hawkins Dean died on August 22, 1952, contrary to Section 12400 of the General Code of the state of Ohio.''

The defendant was found guilty of the charge, without recommendation of mercy.

Motions for a new trial, including one on the ground of newly discovered evidence, were overruled, and the death penalty was imposed.

The gravity of the offense and the presence of the death penalty require a careful consideration of each and every claim of error asserted by counsel for the defendant.

At the outset of such consideration, however, the mandate of Section 13449-5, General Code, must also be borne in mind. The presence of error alone is not sufficient. It must also have been so prejudicial to the rights of the defendant that she "was prevented from having a fair trial.'' With this preliminary comment, the assignments of error are now considered, without a statement here of the facts.developed from the evidence, which facts will be disclosed in the consideration of the several assignments of error.

I. It is claimed that "the trial court erred in overruling the defendant's motion for new trial" in that "the trial court should have granted defendant's request to charge in the general charge on the lesser

degrees, to wit: Murder in the second degree and manslaughter.''

This claim is untenable for the reason that there is no evidence in the record which would sustain a conviction of either of such lesser offenses. The case of the prosecution was solely predicated upon the charge that the defendant willfully administered poison to her husband with intent to kill. The defense was predicated upon a flat denial that defendant so administered poison. She was either guilty of the principal charge, or she was not guilty of any crime.

The basis for the defendant's claim of error under this heading is that it is asserted that she *represented to the prosecution* that she might have accidentally poisoned her husband, or that she gave him poison to make him sick so he would quit work. In her testimony, she categorically denied that she ever gave her husband poison for any purpose. She was asked the following questions by her counsel and gave the following answers:

''Q. Just one more question, Mrs. Dean, I want to ask you one more time, did you at any time give Hawkins Dean any thing * * *. A. You mean in the way of poison?

''Q. * * * in the way of poison, which would kill him or intend to kill him? A. No.''

The defendant made some reference to a ''white powder'' which she gave the deceased and which was supposed to be some sort of medicine he was taking. There never was any positive charge or proof that such medicine contained arsenic. It was never found. On the other hand, the defendant confessed to having given her husband rat poison from a certain bottle which was placed in evidence. Analysis showed the type of poison in the bottle to be identical with the type of poison found in the liver, brain, muscles, stomach,

spleen, kidneys, lungs, heart, blood, and even the bones of the deceased.

Even if it were in evidence that defendant had given the deceased such rat poison or any other poison accidentally, such fact would not have justified a charge on lesser offenses, since, in effect, the introduction of such evidence would still be a denial of willful intent to murder and not an admission of any lesser offense, there being no claim that the accidental administration of poison occurred in connection with some unlawful act. The defense consisted of a repudiation of repeated confessions of guilt and a flat denial of any guilt of the charge set forth in the indictment.

No error intervened in the refusal of the court to charge on lesser offenses. *Malone* v. *State,* 130 Ohio St., 443, 200 N. E., 473; *Bandy* v. *State,* 102 Ohio St., 384, 131 N. E., 499, 21 A. L. R., 594; *State* v. *Hahn,* 59 Ohio App., 178, 17 N. E. (2d), 392, appeals dismissed, 133 Ohio St., 440, 14 N. E. (2d), 354, 305 U. S., 557, 83 L. Ed., 351, 59 S. Ct., 75.

Included under this first assignment is a claim that the court erroneously refused to charge that "if you find that the confession was made for the purpose of shielding some other person and did not set forth the true facts then such confession should be disregarded."

The general charge of the court on confession and admission of guilt shows that the court fully and fairly covered the proper and required instructions upon this subject. The court conducted an extensive examination, in the absence of the jury, covering the circumstances surrounding the confessions, and the jury also was later made fully aware of all that occurred incident thereto. It was for the jury to determine whether the defendant had been influenced to make an untrue statement for the protection of another's guilt. An examination of the whole record is conclusive that such

was not the case. The defendant repeated her admission of guilt many times, both before and after her written confession. Particularly is this true in the case of her conversation with the examining magistrate, who gave her every opportunity to state the truth.

There was no error in refusing the request, in view of the extent and character of the general charge.

II. The second assignment of error is: "The trial court erred in allowing state's exhibit No. 5 to be introduced into evidence. This was the alleged written confession of the defendant."

This assignment is predicated on three main contentions:

1. That defendant was induced to confess, because she was led to believe that her son was charged with the crime.

2. That the defendant was assured there would be no death penalty if she confessed.

3. That she was kept in custody for nine days and subjected to constant questioning, and, after a long tedious experience, including a trip to London and submission to a lie-detector test, followed by questioning until five o'clock in the morning, she confessed from sheer exhaustion.

These several bases for this assignment are so involved with each other that they must be considered together.

The evidence shows that the defendant went to work for the deceased as a housekeeper; that sometime prior to April 12, 1952, they became engaged; that on April 12, 1952, the deceased was induced to make a will in favor of the defendant, leaving her a life estate in all his property; and that they were married on April 13, 1952. There is evidence that this was not a happy marriage; that on August 7, 1952, the deceased was taken violently ill and was taken to the hospital; that

he was treated for symptoms then apparent and returned home on August 15, 1952; that thereafter he appeared in good health; that on August 21, 1952, he was again taken violently ill, and died at his home August 22, 1952; and that an autopsy was performed showing arsenic poisoning.

The defendant was taken into custody on September 3, 1952, and kept in custody until September 12, 1952, when she confessed. No charge of any kind was filed against the defendant until after her confession. Her son and son-in-law also were under suspicion during this period. On September 12, 1952, the defendant was taken to London, Ohio, for a lie-detector test, the result of which is not in evidence. She was returned to the jail in Batavia, Ohio, where, after a short time, she was again questioned. She had a private conference with the prosecutor, which will be the subject of later comment. She was confronted with the statement, "It is down to you or your son." And she then was told, "All right then you are accusing your son," and she then said, "All, right, if it is my son or I, I'll say I did it." She then signed a written confession which was signed by her son as a witness. During the examination she stated, "I have become a Christian and I want to tell you the whole story."

It appears that the poison she administered to the deceased was purchased by him for the purpose of exterminating rats. The defendant described the bottle from which she took the poison and upon being shown a bottle said that this bottle was not the one she used, and that the one from which she took the poison had a black cap; and she told where it could be found. It was later found and on September 12 shown her, and she identified it as the one she used. She was requested to show what dosage she gave the deceased and, according to the witness, it was apparently a

teaspoonful. In this connection, on being asked to show how she poured out the poison, a glass was given her to demonstrate, and the defendant made the following significant statement in her cross-examination:

"Q. Did you pour from one glass to another, indicating how much you gave him? A. I tried to but I couldn't pour out of a glass like I could out of a bottle."

Before making her confession, the defendant was fully cautioned as to her rights and the consequences of a confession. At no time did the defendant make any objection to her restraint or to questioning. She admitted that she had been treated "correctly" during the day of her trip to London. At no time did the defendant complain of fatigue, and in fact stated during the evening when she made her confession: "I can stay here for two or three days if you want me to."

It is true that had the evidence shown that the defendant had been abused during her stay in jail previous to confessing, or that she had requested counsel and been refused, or that she was suffering from fatigue and exhaustion when she made her confession or before, such ground for error would have been present. None of these conditions existed. It is only in her statements in support of her motion for a new trial on the ground of newly discovered evidence that any suggesteion of duress is apparent.

It is strange that any suggestion of this contention first appears at this stage of the proceedings. In this connection, this motion was properly overruled, no ground having been shown for the granting of same.

As to the claim that the confession should have been excluded because induced by a desire to protect her son, the record is replete with evidence that the defendant was not confessing to a crime she did not commit, and that she did not want her son charged with a crime

which she knew she had committed. An entirely different slant is shown in her position where, in her testimony, she stated: "Well they told me that Carl said he knew I done it and they told me my children had turned against me and I didn't feel I had anything to live for." This certainly does not bear out the claim that the defendant confessed to save Carl from an unjust charge.

The claim that the defendant was induced to confess by promises of immunity from death rests upon an outburst by her daughter on the witness stand, which seems to have been unconnected with the course of the examination then taking place. Certainly, at no time did the defendant make any such claim. Some attempt was made to show that the defendant was subject to mental strain. It is to be noted that she had been taken to Lima State Hospital and was found to be fit for trial under the indictment. In no respect did the evidence of her psychiatrist (who conferred with her for only half an hour) sustain any claim that she was of such a mentality as not to comprehend the nature and consequences of her confession.

III. The third assignment of error deals with charges of misconduct by the prosecuting attorney and his assistant. Only one of the several charges requires comment.

In the closing argument of the prosecution, there appear statements wholly improper, especially in a closing argument to the jury. The prosecutor related a private conference with the defendant as to which he stated facts which he had not testified to as a witness, and which, by reason of the fact that only the prosecutor and defendant were present, could be proved only by the sworn testimony of the prosecutor or admissions of the defendant. A part of the statements made by the prosecutor as to this conference

was admitted by the defendant. She admitted that this private conference took place, and that the prosecutor said: "Mrs. Dean, I don't want anything in this case but what is the truth." The defendant, however, did not admit that she had confessed to the prosecutor, as he stated in his argument.

The action of the prosecutor in making statements in his closing argument, which were not sustained by the record, constituted misconduct on his part. Objection to this was made by the defendant's counsel. The court merely said, "Confine your argument to the facts and proceed," and did not then instruct the jury to disregard the statements of the prosecutor. Even after such mild statement by the court, the prosecutor continued to narrate matters that were not in evidence. Unquestionably, all this constituted error. Was it of such a character as to be prejudicial and to warrant setting aside the verdict? Although the court failed to instruct the jury to disregard the statements of counsel as it should have done at the time objection was made, it did instruct the jury in its general charge to that effect, as follows:

"At the conclusion of all of the evidence, counsel for both sides are permitted to argue the case to you of the jury. The purpose of these arguments is to aid the jury in arriving at a correct solution of the questions presented. The legitimate scope of argument is confined to the evidence and what counsel claim are reasonable inferences to be drawn from that evidence. If counsel for either side have gone outside of the evidence and the reasonable inferences to be drawn therefrom, you are to disregard the arguments insofar as that was done, in arriving at your final conclusion.

"You must distinguish between mere arguments which are made before you and the evidence upon which these arguments rest. You may carefully dis-

tinguish and analyze the basis of the assertions which are made to you by either side and see what basis they have in the evidence.''

Aside from this, the evidence is conclusive as to the guilt of the defendant. Her confessions were repeated many times to different persons. One statement, as follows, is significant:

"Q. Now, I will ask you whether or not you asked her about the administering of the poisoning on the 5th and 6th days of September and his consequent hospitalization? A. The 5th and 6th of August you mean.

"Q. 5th and 6th of August, yes, sir—excuse me. A. She said that after having given him the poison on the 5th and 6th of August that he had gone to the hospital and returned apparently a well man. She said that 'having been to the hospital for a week and they didn't find out what was wrong with him, I was reasonably sure I could get away with poisoning him.' ''

No serious claim is made by the defendant that she was tortured or mistreated at any time, or that she made her several statements admitting guilt under strain or duress. She described in detail the several circumstances involved in the administration of the poison. The jury had before it the witnesses and could fully judge as to their credibility and veracity. A reading of the entire record leaves the conviction that the defendant had a fair and impartial trial and is guilty of the offense with which she was charged.

While the misconduct involved and the inaction of the court may have constituted error, in view of the inescapable conclusions from the entire record, such error cannot be said to have been prejudicial to the rights of the defendant to a fair and impartial trial. *State* v. *Nevius,* 147 Ohio St., 263, 284, 71 N. E. (2d), 258, certiorari denied, 331 U. S., 839, 91 L. Ed., 1851, 67 S. Ct., 1521; *State* v. *Moon,* 124 Ohio St., 465, 470, 179 N. E., 350; Section 13449-5, General Code.

It may properly be added here that each of the judges of this court conducted an independent and individual perusal of the record, exhibits and briefs, and, as will appear, reached the same conclusion of guilt.

The judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., ROSS and HILDEBRANT, JJ., concur in the syllabus, opinion and judgment.