OPINION
{¶ 1} Defendant-appellant John Rembert appeals from his conviction and sentence on one count of aggravated robbery, a violation of R.C.2911.01(A)(1), one count robbery, a violation of R.C. 2911.02(A), one count kidnapping, a violation of R.C. 2905.01(A)(2), one count abduction, a violation of R.C. 2905.02(A)(1), and one count of having a weapon under disability, a violation of R.C. 2923.13(B)(1). Each count included a firearm specification. In addition, the trial court found appellant guilty of a repeat violent offender specification. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 8, 2003, appellant was indicted on five separate counts, all of which contained a firearm specification: one count of aggravated robbery, a violation of R.C. 2911.01(A)(1), one count robbery, a violation of R.C. 2911.02(A), one count kidnapping, a violation of R.C. 2905.01(A)(2), one count abduction, a violation of R.C. 2905.02(A)(1), and one count of having a weapon under disability, a violation of R.C. 2923.13(B). The indictment also contained a repeat violent offender specification, pursuant to R.C. 2941.149.
 {¶ 3} The matter proceeded to a jury trial on July 8 and July 9, 2004. The following facts were elicited at trial. Kimberly Gorman was planning to rob her father, Kenneth Gorman, in order to obtain some money and Xanax pills from his residence. Kimberly first approached her boyfriend, Joe Thompson for help, but he refused to help her commit the robbery. Thereafter, Kimberly contacted appellant, whom she called "J.R." Appellant agreed to participate and told Kimberly to meet him at Liberty Park. From there, Kimberly and the appellant went to the appellant's house to work out a plan. The plan that they worked out was that Kimberly would knock on the door while appellant was hiding against the house on the left side of the door. Once her father opened the door, Kimberly would go inside. When Kimberly looked out the door it was appellant's cue to come inside.
 {¶ 4} Around 9:00 that evening, appellant and Kimberly got into appellant's car and drove to Kenneth Gorman's house. While Kimberly was hiding in the back seat, she noticed a shot gun partially covered with a jean jacket on the floor. When they arrived at her father's house, Kimberly went to the door while appellant hid behind the porch swing against the house. Kimberly knocked at the door, and when her father answered, she told him that she was in trouble and needed to come in. She then went into the house and looked back, giving appellant his cue to come inside. Appellant pushed his way into the residence, armed with a shotgun. Appellant pointed the shotgun at Kenneth Gorman and told him to do as he said. Mr. Gorman attempted to fight back by grabbing the shotgun barrel but appellant hit him in the chin with the shotgun. Appellant ordered Mr. Gorman into the bedroom and to lay face down on the bed. Appellant ordered Kimberly to tie her father up but she could not. Appellant then put tape around Mr. Gorman's mouth and his wrists and hog tied him with a phone cord. Appellant had brought the tape and phone cord with him. Appellant then went through Mr. Gorman's pockets and stole some money. Appellant then told Kimberly to go upstairs and look for the rest of the money and the Xanax pills. When she came back downstairs, appellant had carried her father into the bathroom. Appellant threatened to kill Mr. Gorman if he moved. Kimberly and appellant then left, leaving Mr. Gorman tied up in the bathroom.
 {¶ 5} Kimberly and appellant went back to appellant's house to split up the money and smoke some crack cocaine. Mr. Gorman was able to untie himself and called 9-1-1. When Officer McKinley of the Mansfield Police Department arrived in response to the 9-1-1 call, Mr. Gorman gave him a description of the man who committed the robbery with his daughter. Officer McKinley testified that Mr. Gorman advised him that the man was a black male, approximately 5'9", 170 pounds and wearing black clothes.
 {¶ 6} Kimberly Gorman was arrested and taken to the Juvenile Attention Center on November 26, 2003. She initially refused to cooperate with police, but later informed the police that the man who had participated in the robbery was named J.R. She identified appellant in a photo array shown to her. Mr. Gorman also picked appellant out of the photo lineup.
 {¶ 7} Based on the identification provided by Kimberly and Kenneth Gorman, the police determined that J.R. was appellant, John Rembert. It was also determined that appellant was on parole.[1] Appellant's parole officer was contacted. Appellant's parole officer conducted a search of appellant's residence. During that search, parole officers found a shotgun and a jean jacket.
 {¶ 8} The jury returned a verdict of guilty on all counts and found appellant guilty of the firearm specification. In addition, the trial court made a finding of guilty on the repeat violent offender specification.
 {¶ 9} Pursuant to a Sentencing Entry filed July 14, 2004, appellant was sentenced to nine years of imprisonment on aggravated robbery, nine years of imprisonment on kidnapping, three years of imprisonment on having a weapon under disability, and an additional three years of imprisonment for the firearm specification. The count of robbery was merged into the aggravated robbery conviction. The count of abduction was merged into the kidnapping conviction. All counts were ordered to be served consecutively. In total, appellant was ordered to serve 24 years in prison.
 {¶ 10} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 11} "I. APPELLANT WAS DENIED A FAIR TRAIL [SIC] WHEN THE TRIAL COURT COERCED THE STATE'S WITNESS, KIMBERLY GORMAN, INTO TESTIFYING.
 {¶ 12} "II. APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 I {¶ 13} In the first assignment of error, appellant contends that he was denied a fair trial when the trial court coerced Kimberly Gorman to testify by threatening to find her in contempt and to sentence her to eight months in the Ohio Reformatory for Women, to be served after she completed her current sentence at DYS.[2] We disagree.
 {¶ 14} Appellant argues that, pursuant to R.C. 2705.02 and R.C. 2705.03, before Kimberly could be found to be in contempt, Kimberly had a right to a hearing and should have been advised of her right to counsel. Because of these violations of Kimberly's rights, appellant asks this court to disregard Kimberly's testimony.
 {¶ 15} It is axiomatic that in order for there to be reversible error, there must be prejudice to the appellant. See State v. Dean (May 29, 1953), 94 Ohio App. 540, 16 N.E.2d 767; Tingue v. State (June 26, 1914), 90 Ohio St. 368, 108 N.E. 222. We fail to see how appellant's right to a fair trial was prejudiced by the trial court's actions in regard to Kimberly's testimony. The argument that Kimberly's rights were violated by the trial court is not directly relevant to whether appellant's rights were violated. Appellant makes no argument as to how or why the trial court's actions towards Kimberly affected appellant's rights. There is no allegation whatsoever that Kimberly was pressured to lie or otherwise act inappropriately as a response to the trial court's conduct towards Kimberly. The only rights allegedly violated were Kimberly's rights. As such, we find appellant's arguments meritless.
 {¶ 16} Appellant's first assignment of error is overruled.
 II {¶ 17} In the second assignment of error, appellant contends that his right to effective assistance of counsel was violated. We disagree.
 {¶ 18} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 19} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 20} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, (citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra. at 143 (quoting Strickland, supra. at 697).
 {¶ 21} In this case, appellant raises several instances of conduct by trial counsel which he alleges constituted ineffective assistance of counsel: failing to object to the testimony of Officer McKinley regarding his familiarity with bruising and the stages of bruises;[3] failing to object to the admission of the photo array shown to Kimberly and Kenneth Gorman; failing to object to hearsay testimony of witness, Joe Thompson who testified about his conversation with Kimberly in which she said she wanted to take money from her father and she would get J.R. to help her; allowing a Mansfield Municipal Court probation officer to remain on the jury; failing to subpoena witnesses on appellant's behalf and recalling State's witness, Detective Steven Blush to testify as a defense witness after he had already testified for the State; failing to allow the Appellant to testify regarding his acquaintance with Kimberly Gorman; and failing to prepare for trial because trial counsel was not counsel of record at the preliminary hearing and did not obtain a transcript of the preliminary hearing."
 {¶ 22} We find that we need not address each argument individually. Even if we assume arguendo that any of the above alleged errors were indeed error and could be demonstrated from the record before this court, it was harmless error. The evidence in this case was overwhelming.
 {¶ 23} Kimberly Gorman testified in detail about the robbery and identified appellant as the accomplice in the robbery. Kimberly testified that appellant supplied gloves that she and appellant wore during the commission of the robbery and the tape and phone cord used to tie up Mr. Gorman. Kimberly also testified that she saw the shotgun used by appellant in the back of appellant's vehicle prior to the robbery. Kimberly testified quite clearly about the actions taken by appellant and herself during the incident, including the struggle between appellant and Mr. Gorman, the taking of the money they could find, how appellant ordered her to tie her father up and when she would not, how appellant tied up Mr. Gorman. Kimberly also testified that appellant threatened to kill both her and Mr. Gorman.
 {¶ 24} In addition, Kenneth Gorman testified. He had an opportunity to observe appellant during the robbery. Mr. Gorman identified appellant and testified that appellant repeatedly threatened to kill him if he did not cooperate and tell appellant where the money was located. Prior to trial, Mr. Gorman gave a description of appellant to the police. When appellant was booked at the jail following his arrest, appellant's height was listed as the exact height given by Mr. Gorman in his description and just five pounds heavier than the weight Mr. Gorman gave to police as part of the description.
 {¶ 25} After appellant became a suspect, a search of appellant's home was conducted by his parole officer. A shotgun was found in appellant's home. The shotgun was found to be operable by the Mansfield Crime Lab.
 {¶ 26} Based upon the overwhelming evidence, we find that if any of the alleged errors were actually error, such error was harmless.
 {¶ 27} Accordingly, appellant's second assignment of error is overruled.
 {¶ 28} The judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant had prior convictions for aggravated robbery, robbery and rape.
[2] "DYS" is the Department of Youth Services.
[3] This testimony was offered after Officer McKinley testified about the bruising he observed on Mr. Gorman's person.