**HOSKINS et al., Appellants,**

v.

**SIMONES et al., Appellees.**

[Cite as *Hoskins v. Simones,* 173 Ohio App.3d 186, 2007-Ohio-4084.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21878.

Decided Aug. 3, 2007.

Dwight D. Brannon and Matthew C. Schultz, for appellants.

David F. Chuparkoff, for appellees Joe P. Simones and Joshua T. Simones.

Margaret R. Young, for appellee State Farm Insurance Company.

WOLFF, Presiding Judge.

{¶ 1} Pamela Hoskins, her husband, and her son appeal from the dismissal of their negligent-entrustment claim against Joshua Simones and the denials of their motions for directed verdict, for judgment notwithstanding the verdict, for a new trial, and for additur after a jury trial in the Montgomery County Court of Common Pleas on her negligence claim against Joe Simones.

{¶ 2} This litigation stems from an automobile accident on November 6, 2003, involving Pamela Hoskins and Joe Simones ("Joe"). According to the Hoskinses' complaint, Joe negligently failed to stop at a stop sign at the intersection of Wilmington Pike and Farrington Road in Kettering, Ohio, and collided with Pamela's vehicle, causing personal injuries and property damage. The car driven by Joe belonged to Joshua Simones ("Joshua"), Joe's son.

{¶ 3} Pamela, her husband, and her son filed a personal-injury and loss-of-consortium action against Joe and Joshua Simones, as well as the parties' insurers. The Hoskinses asserted claims of negligence and negligence per se against Joe and a negligent-entrustment claim against Joshua. The Hoskinses also sought punitive damages.

{¶ 4} On November 22, 2005, the Hoskinses filed a motion for summary judgment on the issues of Joe's and Joshua's liability. The Simoneses did not contest Joe's liability, but responded with a motion for summary judgment on the negligent-entrustment claim against Joshua. The court granted the Hoskinses' motion as to Joe's negligence, leaving for the jury the issues of proximate cause and damages. As to the negligent-entrustment claim, the court denied both motions for summary judgment, finding that there were genuine issues of

material fact as to whether Joe was incompetent to drive on the day of the accident and whether Joshua was aware that his father was an incompetent driver.

{¶ 5} At a conference in chambers before the beginning of trial, the court bifurcated the negligent-entrustment claim against Joshua from the negligence claim against Joe for trial, reasoning that there would be no need for evidence on the permanent suspension of Joe's driver's license in 1997 in the negligence action if the claims were bifurcated. The Hoskinses' negligence claim against Joe was subsequently tried to a jury on February 21 and 22, 2006. At the conclusion of trial, the jury awarded $2,000 for past medical expenses, $2,000 for future medical expenses, and $6,000 for past pain and suffering.

{¶ 6} On March 9, 2006, the Hoskinses filed a motion for a directed verdict, a motion for judgment notwithstanding the verdict, a motion for a new trial, and a motion for an additur. They argued that their expert provided unrebutted testimony regarding Pamela Hoskins's injuries and that the injuries were caused by the accident. The Hoskinses asserted that reasonable minds could come to only one conclusion—that they were entitled to compensation for all of Pamela's claimed past and future medical expenses and that she should have been awarded $23,918.41 for past medical expenses. On September 21, 2006, the trial court overruled all of these motions. In a footnote in its judgment, the trial court noted that the negligent-entrustment case was still pending, but it stated that it "cannot imagine that punitive damages are an appropriate remedy in the negligent entrustment claim." It further observed that the accident had been "a 'garden variety' failure to yield automobile collision" with no evidence of malice on Joe's or Joshua's part. It concluded that there seemed to be nothing to submit to the jury on the negligent-entrustment claim but recognized that the Hoskinses did not agree with this conclusion.

{¶ 7} On September 28, 2006, Joshua filed a motion to dismiss the claim alleging negligent entrustment. The court treated the motion as a motion for a directed verdict, and on October 4, 2006, the court sustained the motion.

{¶ 8} The Hoskinses raise eight assignments of error on appeal. We will address them in a manner that facilitates our analysis.

{¶ 9} I. "The trial court erred by dismissing appellants' claim against appellee Joshua Simones for negligent entrustment of a motor vehicle."

{¶ 10} II. "The trial court erred by denying appellants the opportunity to pursue their claims for separate damages against appellee Joshua Simones."

{¶ 11} In the first and second assignments of error, the Hoskinses claim that the trial court improperly dismissed their negligent-entrustment claim against Joshua without allowing them to defend against the motion. They claim that the

trial court could not have properly assessed the strength of their evidence against Joshua based solely upon the evidence presented as to Joe's negligence. They claim that they could have established their right to punitive damages if they had been given the opportunity. In opposition to the Hoskinses' argument, Joshua contends that the directed verdict was proper because Pamela Hoskins was not entitled to recover twice for her injuries.

{¶ 12} A motion for directed verdict must be overruled unless reasonable minds, construing the evidence most strongly in favor of the party against whom the motion is directed, could reach no other conclusion but that under the applicable law, the movant is entitled to judgment in his favor. Civ.R. 50; *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145; *Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc.* (1996), 116 Ohio App.3d 692, 699, 689 N.E.2d 56; *Knepler v. Cowden* (Dec. 23, 1999), Montgomery App. No. 17473, 1999 WL 1243349. Hoskins was not entitled to recover more than once for her actual damages. The jury's verdict in this case represented its assessment of the value of her actual damages, and it awarded the full amount of those damages against Joe. As such, we agree with Joshua that Pamela was not entitled to collect any additional monies from him for her actual damages. However, that does not preclude a judgment against Joshua for the same compensatory damages if the Hoskinses establish their negligent-entrustment claim, because Joe and Joshua would be jointly and severally liable to the Hoskinses if their respective negligent actions proximately caused Pamela's injury. The trial court erred when it granted a directed verdict to Joshua on the Hoskinses' negligent-entrustment claim.

{¶ 13} The Hoskinses' objection to the directed verdict in favor of Joshua, however, is not limited to the issue of actual damages. They also had sought punitive damages under the theory that Joshua had entrusted Joe with a car notwithstanding his knowledge of Joe's poor driving record and lack of a driver's license. Because the trial court had bifurcated the issues of negligence and negligent entrustment for trial and Joe had conceded his negligence, no evidence was presented at the trial about Joe's driving record or Joshua's knowledge of it. Insofar as the Hoskinses were never given an opportunity to present their evidence on the issue of negligent entrustment, the trial court should not have entered judgment on the question of whether their evidence could support the conclusion that they were entitled to punitive damages.

{¶ 14} The record suggests that the Hoskinses intend to rely heavily on Joshua's alleged knowledge that Joe did not have a valid driver's license in support of their claim for punitive damages. The trial court expressly stated that such evidence, without more, was insufficient to establish the malice required to show that punitive damages are appropriate. It did not give the Hoskinses the

opportunity, however, to fully present their evidence on this point. While we might agree with the trial court's assessment that Joshua's knowledge that Joe lacked a valid driver's license, without more, is probably insufficient to establish malice, the court must give the Hoskinses the opportunity to fully present their evidence before making this determination. Thus, the court erred in directing a verdict in Joshua's favor on the Hoskinses' claim for punitive damages without giving them an opportunity to present all of their evidence in support of that claim. If the Hoskinses are able to establish their claim of negligent-entrustment against Joshua, Pamela would be entitled to a judgment for actual damages in the same amount as the jury awarded her against Joe—although she could only collect once—and an additional award of punitive damages, if she established that claim. *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraphs two and three of the syllabus.

{¶ 15} If Joshua believes that the Hoskinses possess insufficient evidence of punitive damages on their negligent-entrustment claim against him, he can move for summary judgment on that aspect of the claim.

{¶ 16} The first and second assignments of error are sustained.

{¶ 17} III. "The trial court erred by excluding evidence at trial of appellee Joe Simones' driver's license suspension."

{¶ 18} The Hoskinses claim that the trial court's exclusion of evidence that Joe did not have a valid driver's license at the time of the accident unfairly undercut their claim for punitive damages. They claim that evidence of his lack of a license, coupled with his admissions that he had poor eyesight and had consumed alcohol within 48 hours of the accident, would have established "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm," thereby entitling them to punitive damages.

{¶ 19} The trial court's ruling that evidence of Joe's lack of driving privileges would be excluded was made prior to trial. To preserve the error assigned, the Hoskinses were required to obtain a ruling on the record in the course of the trial, when the factual issue could actually be raised, by seeking to offer the evidence or, if that request was denied, by proffering the evidence for the record. *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142; *State v. Spahr* (1976), 47 Ohio App.2d 221, 1 O.O.3d 289, 353 N.E.2d 624.

{¶ 20} App.R. 9(B) provides that an appellant must order a transcript of all parts of the proceedings that he or she considers necessary for the appeal. For purposes of her appeal, the Hoskinses transcribed only a small portion of the transcript. This portion includes an extensive conversation between the judge and the attorneys about bifurcation, the court's role as a "gatekeeper" in submitting the punitive-damages issue to the jury, and the court's view that

"simply because Joe Simones had his license suspended and his son either knew or constructively knew that that license was suspended [was] not going to be sufficient * * * to submit the issue of punitive damages to the jury." The partial transcript also includes a portion of Dr. Michael Pedoto's deposition. Pedoto had diagnosed Hoskins with and treated her for thoracic outlet syndrome, and he opined that this condition was related to her accident with Simones. Finally, the partial transcript includes the Hoskinses' motion for a directed verdict. The transcribed portion does not include a list of witnesses, any of Pamela's own testimony, or any of Simones' evidence challenging Hoskins's assertions that Pamela's injuries were caused by this accident. The partial transcript also does not demonstrate that the Hoskinses attempted to offer evidence of Joe's license suspension.

{¶ 21} In order for there to be reversible error, there must be prejudice to the appellant. *State v. Dean* (1953), 94 Ohio App. 540, 52 O.O. 311, 116 N.E.2d 767; *State v. Rembert,* Richland App. No. 04 CA 66, 2005-Ohio-4718, 2005 WL 2175133. Based on the very limited record before us, we cannot determine whether the evidence about Joe's license suspension might have had any significant impact on the jury's assessment of the claim for punitive damages. None of the other testimony in support of punitive damages was transcribed. The Hoskinses' attorney's dialogue with the court suggests that there may have been some evidence of poor eyesight and consumption of alcohol, but there is no way for us to determine what, if any, evidence of these impairments was before the jury. As such, even if we were to determine that the trial court should have admitted evidence of the license suspension, we would be unable to determine whether the exclusion of that evidence was prejudicial.

{¶ 22} Because the record is inadequate to review this claim, the third assignment of error is overruled.

{¶ 23} IV. "The trial court erred by denying appellants' motion for a directed verdict."

{¶ 24} V. "The trial court erred by denying appellants' motion of judgment notwithstanding the verdict."

{¶ 25} VII. "The trial court erred by denying appellants' motion for a new trial."

{¶ 26} The Hoskinses claim that they were entitled to a directed verdict, a judgment notwithstanding the verdict, or a new trial because the amount of the jury's award did not reflect the expense of Pamela's medical treatment and thus was unreasonable. They claim that the jury's award "flies in the face of precedent" which holds that the amount paid for medical expenses "constitutes prima facie evidence of the necessity and reasonableness of the charges." They

claim that "Joe Simones produced no substantial, credible evidence to show that the treatment [Pamela] received, and thus the expense of that treatment, was not reasonable."

{¶ 27} In his brief, Joe claims that his evidence established that Pamela had an extensive history of preexisting medical problems "including various health complaints beginning at the age of 16 years of age * * * chronic low back complaints, and other motor vehicle accidents with associated difficulty in standing, sitting and driving." Thus, Joe's evidence seems to have challenged the connection between Pamela's injuries and their accident, rather than the extent of her injuries and medical treatment.

{¶ 28} Again, we note that the Hoskinses did not provide a complete transcript of the trial court's proceedings. Without reviewing the entire record—particularly Joe's evidence that Pamela's injuries were not attributable to this accident—we must presume that the jury's verdict was supported by competent, credible evidence. As such, we must also conclude that the Hoskinses were not entitled to a directed verdict, a judgment notwithstanding the verdict, or a new trial.

{¶ 29} The fourth, fifth, and seventh assignments of error are overruled.

{¶ 30} VI. "The trial court erred by denying appellants' motion for additur."

{¶ 31} The Hoskinses' sixth assignment of error is similar to their fourth and fifth assignments. Here, they claim that the jury's award was inadequate to reimburse Pamela for her medical expenses and that the trial court should have increased the amount of the jury's award when it denied her motion for a new trial.

{¶ 32} As we discussed previously, the small portions of the trial that were transcribed are inadequate for us to fully review the jury's determination as to damages. Thus, we must assume that the jury acted reasonably in awarding the damages that it did and that the trial court properly concluded that additur was not appropriate.

{¶ 33} The sixth assignment of error is overruled.

{¶ 34} VIII. "The trial court erred prejudicially by admitting inadmissible evidence."

{¶ 35} The Hoskinses argue that the trial court "erred in admitting testimony of Dr. Steiman that was hearsay and otherwise inadmissible and in allowing examination from inadmissible records." The evidence in question apparently came from Dr. Steiman's deposition, which was allegedly played for the jury and was referenced in the direct examination of the defense expert and in the cross-examination of Pamela. Joe contends that Dr. Steiman's testimony was properly admitted.

{¶ 36} Without a more complete transcript of the proceedings, we cannot conclude that evidence was improperly admitted. We do not know which portions of the deposition were used or how they were used. Although the deposition transcript is in the record, it is heavily edited. It is not clear who edited it or for what purpose, and we cannot and will not attempt to decipher which portions were admitted at trial. Moreover, without a transcript of the trial proceedings, we cannot determine whether the Hoskinses objected in the trial court to the admission of all or part of the deposition. Finally, even if we were to agree with the Hoskinses that error had been committed, the paucity of the transcript would make it impossible for us to determine whether the use of Dr. Steiman's deposition testimony was prejudicial to them.

{¶ 37} The eighth assignment of error is overruled.

{¶ 38} In their reply brief, the Hoskinses raise an additional argument for the first time. They claim that the trial court prohibited them from "seeking to enforce [Pamela's] uninsured/underinsured motorist policy and from defending against State Farm's claim for reimbursement." The Hoskinses are not permitted to raise new arguments in their reply brief. *Durham v. Pike Cty. Joint Vocational School*, 150 Ohio App.3d 148, 2002-Ohio-6300, 779 N.E.2d 1051, ¶ 12; *State v. Hubbard*, Franklin App. No. 03AP–286, 2004-Ohio-553, 2004 WL 235197, fn. 2. See also App.R. 16(C). Reply briefs are merely intended to be an opportunity to reply to the brief of the appellee. *Durham* at ¶ 12. Thus, we will not address this argument.

{¶ 39} The judgment of the trial court is affirmed in part and reversed in part. This matter is remanded for further proceedings on the Hoskinses' claim against Joshua for punitive damages.

Judgment affirmed in part
and reversed in part.

GRADY and DONOVAN, JJ., concur.