[Cite as *Buckingham v. Buckingham*, 2014-Ohio-5798.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

JAY A. BUCKINGHAM                                     :

      Plaintiff-Appellant                         : C.A. CASE NO.    2013 CA 77

v.                                                   : T.C. NO.    13DR153

NANCY J. BUCKINGHAM                           :     (Civil appeal from Common
                                          Pleas Court, Domestic Relations)

      Defendant-Appellee                        :


                                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____30th____ day of ____December____, 2014.

. . . . . . . . . .

KENT J. DePOORTER, Atty. Reg. No. 0058487, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
      Attorney for Plaintiff-Appellant

F. ANN CROSSMAN, Atty. Reg. No. 0043525 and MICHELLE M. MACIOROWSKI, Atty. Reg. No. 0067692, 7051 Clyo Road, Centerville, Ohio 45459
      Attorneys for Defendant-Appellee

. . . . . . . . . .

FROELICH, P.J.

{¶ 1}   Jay A. Buckingham appeals from a Final Judgment and Decree of Divorce entered by the Greene County Court of Common Pleas, Domestic Relations Division.   The judgment and decree were based upon an agreement read into the record by the parties; the court adopted an entry drafted by Nancy J. Buckingham's attorney.   Mr. Buckingham disputes some of the terms contained in this agreement and the court's decision not to adopt his proposed entry.

{¶ 2}   For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3}   Following 17 years of marriage, Mr. Buckingham filed a complaint for divorce in June 2011, and Mrs. Buckingham filed a counterclaim for divorce; there were no children of the marriage.   The parties agreed to use June 30, 2011, as the date of separation.  The court entered temporary orders with respect to the parties' ongoing expenses and spousal support (payable to Mrs. Buckingham).   In April 2013, the parties filed a hand-written agreed entry which stated that the case would be dismissed without prejudice and that it would be continued upon the filing of a new complaint, answer, and counterclaim.

{¶ 4}   The second complaint was filed in June 2013 and, by agreement of the parties, their prior arrangement with respect to temporary spousal support remained in effect.  The parties also filed an agreed entry in June 2013, which reflected the issues that the parties had agreed upon up to that point.   Hearings were held on April 22, April 23, and July 22, 2013, at which the parties read their agreements as to property division and spousal support into the record.

{¶ 5}   After the final hearing, Mrs. Buckingham's attorney was ordered to prepare

a decree of divorce and other documents to effectuate the parties' agreement; she filed these documents on October 8, 2013. After a telephone conference with the court, it became apparent that there were some points of disagreement as to the content of the proposed agreement. Mr. Buckingham was given two weeks to submit his own version of the parties' agreement, which he did on October 25, 2013. On November 25, 2013, the trial court adopted Mrs. Buckingham's proposed Final Judgment and Decree of Divorce.

{¶ 6} Mr. Buckingham appeals, raising two assignments of error.

{¶ 7} In his first assignment of error, Mr. Buckingham contends that the agreement adopted by the trial court did not reflect the parties' agreement in three respects: the deductibility of spousal support; the source of the funds from which he could pay for the division of marital assets; and the amount Mrs. Buckingham was permitted to retain from certain financial accounts.

*Tax Consequences of Spousal Support Payments*

{¶ 8} In August 2011, the trial court established Mr. Buckingham's temporary spousal support payment to Mrs. Buckingham. Its order stated, in pertinent part: "Plaintiff [Mr. Buckingham] shall pay for temporary nontaxable spousal support to the Defendant [Mrs. Buckingham] the amount of **$5000.00** per mont[h] beginning October 1, 2011. * * *" (Emphasis sic.) When the parties filed an agreed entry with the court in June 2013, which was intended to reflect their areas of agreement from the prior case, it stated: "The Temporary Order of Spousal Support effective August 1, 2011 in the amount of $5,000.00 per month shall remain in full force and effect through the filing of the new case." The June 2013 agreed entry further stated that Mr. Buckingham would receive credit for the length of

time he had paid spousal support under the temporary order when the court ultimately resolved this issue.

{¶ 9}   Pursuant to their final agreement, Mr. Buckingham was to pay spousal support in the amount of $9,500 per month for a period of six years.  Due to the parties' prior agreement, Mr. Buckingham was entitled to credit for the length and amount of spousal support he had already paid under the temporary order.  Although Mr. Buckingham was current on his support obligation of $5,000 per month under the temporary order, the final order created an arrearage of $117,000 (the difference between the temporary $5,000/month and the new $9,500/month orders); Mr. Buckingham agreed to make a lump sum payment of $40,000 and to pay the balance over two years.  Mr. Buckingham expressed his agreement to these terms at the April 23, 2013 hearing, without any discussion of the deductibility or tax consequences of the arrearage payments or of any change to the "nontaxable" nature of the temporary support orders.

{¶ 10}  At the July 22, 2013, final hearing, Mr. Buckingham's attorney stated that, with respect to spousal support, all money paid "will be deductible from Mr. Buckingham's income and taxable to Mrs. Buckingham."  Similarly, the final judgment stated: "The parties further agree that the spousal support shall be included as income to the Defendant [Mrs. Buckingham] and shall be tax deductible to the Plaintiff [Mr. Buckingham].  The parties agree that the arrearage of $117,000.00 on the spousal support is taxable."

{¶ 11}  We begin our discussion of this issue with some clarification of our understanding of what the record reflects regarding the tax status of the spousal support payments through the course of these proceedings.  The parties' and court's statements that

spousal support was "taxable," made at several different junctures, are ambiguous; such statements do not make clear *to whom* the funds are taxable. Based on the parties' arguments and the "nontaxable"/"taxable" designations in the trial court's entries, as well as the fact that the inclusion of the "nontaxable" designation in the temporary order is surplusage unless it relates to the recipient (Mrs. Buckingham), we conclude that the spousal support was not treated as income to Mrs. Buckingham under the temporary spousal support order, but that it was treated as income under the final order. In other words, the tax treatment regarding the arrearage and support going forward was favorable to Mr. Buckingham under the final order, but was favorable to Mrs. Buckingham under the temporary order.

{¶ 12}   In his brief on appeal, Mr. Buckingham seems to contend that none of the spousal support payments (temporary or otherwise) should have been taxable to him. At oral argument, however, Mr. Buckingham asserted that the dispute over the taxability of spousal support centered on the treatment of the support payments made from January through July 2013.

{¶ 13} .  Mr. Buckingham's assertion at oral argument that his spousal support argument on appeal relates only to a 7-month period cannot be reconciled with the argument in his brief, nor can it be viewed as a reasonable extension of that argument. To allow an appellant to raise a new argument in this manner would be unfair to the appellee, who had no notice of this argument and no opportunity to prepare a thorough response. Just as a party is not permitted to raise new arguments in a reply brief, we cannot consider the presentation of a novel argument at oral argument. *See Ameritech Publishing, Inc. v. Griffin*, 2d Dist.

Clark No. 2009 CA 18, 2009-Ohio-5602, ¶ 13, citing *Hoskins v. Simones*, 173 Ohio App.3d 186, 2007-Ohio-4084, 877 N.E.2d 1008, 1015 (2d Dist.2007); *Durham v. Pike Cty. Joint Vocational School*, 150 Ohio App.3d 148, 2002-Ohio-6300, 779 N.E.2d 1051, ¶ 12 (4th Dist.); *State v. Hubbard*, 10th Dist. Franklin No. 03AP-286, 2004-Ohio-553, fn. 2; App.R. 16(C).

{¶ 14}  Regardless, having reviewed the record of the case with this new argument in mind, we have found no support for Mr. Buckingham's assertion at oral argument that there was a distinct agreement for the period encompassing January through July, 2013, or that the parties agreed to alter the tax treatment of the temporary spousal support as of January 2013.

{¶ 15}  Mr. Buckingham argues in his brief that the spousal support payments should have been treated as income to Mrs. Buckingham (and therefore taxable to her and deductible by him) throughout the divorce proceedings.

{¶ 16}  Under the court's temporary support order, Mrs. Buckingham did not treat the support payments as income and therefore did not pay taxes on them; thus, Mr. Buckingham treated the amount he paid as spousal support as his income for tax purposes. Although the temporary support order was not an agreed order (i.e., Mr. Buckingham did not consent to the "nontaxable" nature of the temporary spousal support payments), he did consent to the continuation of this order in the agreed entry dated June 3, 2013.  Moreover, at no point did Mr. Buckingham challenge the court's tax treatment of the temporary payments or ask the court to revisit this issue.  Under these circumstances, the trial court did not err in failing to modify the tax consequences of the temporary support payments when it

addressed the treatment of prospective spousal support payments and those attributable to the newly-created arrearage, at the time of the final judgment. The trial court reasonably concluded that the temporary spousal support payments were taxable to Mr. Buckingham and that the spousal support payments remaining to be paid at the time of the divorce and the arrearage created by the final award were taxable to Mrs. Buckingham.

*Source of Funds from which Property Settlement Would Be Paid*

{¶ 17} Second, Mr. Buckingham contends that the terms of the property settlement upon which the parties had agreed called for him to pay Mrs. Buckingham $1.2 million from qualified or non-qualified sources, but that the final entry "limited [him] to the use of cash or qualified funds from retirement accounts" for the payment of this obligation.

{¶ 18} After a careful review of the final judgment and decree of divorce, we find no language imposing any such restriction. In fact, the only reference to qualified or unqualified funds in the section related to the property settlement states that Mr. Buckingham's attorney "shall prepare the necessary orders *in the event* that qualified funds from retirement accounts are used." (Emphasis added.) This language does not require or prohibit the use of any particular type of funds for the payment of the property settlement and even implicitly approves the usage of qualified funds.

*Financial Accounts*

{¶ 19} Third, Mr. Buckingham asserts that he was entitled to some funds that were contained in financial accounts awarded to Mrs. Buckingham. He claims that, by agreement of the parties, he "was to retain as his sole property all assets, as of June 30, 2011, the date of the separation of the parties, other than" those assets specified to go to Mrs. Buckingham.

On this basis, he contends that he was entitled to the balance in certain financial accounts "in the names of either party as of June 30, 2011." The trial court's final judgment and decree of divorce states that "each party shall retain their individual checking and savings accounts presently in their individual names. The Division of the various investment accounts has been taken into consideration in the Property Settlement paragraph set forth herein."

{¶ 20} Mrs. Buckingham's response to this argument assumes that Mr. Buckingham is disputing how the appreciation on the financial accounts in Mrs. Buckingham's name should be distributed. Rather, it appears to this court that Mr. Buckingham is claiming a right *to the entire amount* of each account as of June 30, 2011, the date of the parties' separation, i.e., that, if anything, Mrs. Buckingham is *only* entitled to the appreciation after that date.

{¶ 21} Mr. Buckingham's argument relies on a statement by his attorney at the beginning of the July 22, 2013, hearing, wherein he lists several items or amounts to which Mrs. Buckingham is entitled under the agreement (not including the accounts in her name), then states: "The husband is to retain all other assets and liabilities, except for what was previously read today and what was previously personal property that was read into the record * * *." Mr. Buckingham advocates for an expansive reading of this statement, such that even amounts in financial accounts under Mrs. Buckingham's name were awarded to him. However, such an interpretation is not the only reasonable interpretation, given the entire context of the hearings and negotiations. For example, at another part of the July hearing, after Mr. Buckingham's counsel's statement about who shall be entitled to which assets, Mrs. Buckingham's attorney states that "[e]ach party will retain their own checking

and savings accounts," and Mr. Buckingham's attorney appears to agree. Mr. Buckingham himself also states at the end of the hearing (after the statement about the parties' retaining their own accounts) that he agreed with everything that had been read into the record.

{¶ 22} The inconsistency of these statements created some ambiguity about the parties' intentions with respect to these accounts. Because the statement related to the financial accounts is more specific than the general, "catch-all" statement upon which Mr. Buckingham's argument relies, we cannot conclude that the trial court abused its discretion in concluding that the agreed entry submitted by Mrs. Buckingham accurately reflected the parties' agreement and that the parties intended to keep the accounts in their own names. Moreover, insofar as the parties' retention of their own accounts, according to the final judgment, was factored into the property settlement, any adjustment to the distribution of these accounts would necessitate a corresponding   adjustment of the property settlement.

{¶ 23} The first assignment of error is overruled.

{¶ 24} In his second assignment of error, Mr. Buckingham asserts that the decree approved by the trial court was against the manifest weight of the evidence, because it "chang[ed]" the terms of the parties' agreement. He relies on the same arguments set forth under the first assignment of error.

{¶ 25} The manifest weight of the evidence analysis rests on the strong presumption that the trial court, as the trier of fact, is in the best position to weigh the evidence presented, to assess the credibility of the witnesses, and to make an informed factual determination therefrom. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 26} Where, as here, the parties have read an agreement into the record, the

enforcement of an agreed entry presented by one of the parties or the determination which of two competing entries more accurately reflects the parties' agreement, does not require the trial court to weigh evidence or to assess the credibility of witnesses. Rather, the court reviews the record of the parties' agreement and determines which entry best reflects that agreement.

**{¶ 27}** We interpret Mr. Buckingham's weight of the evidence argument as challenging the trial court's conclusion that Mrs. Buckingham's entry accurately reflected the parties' agreement. Having thoroughly reviewed the record and the specific issues raised in Mr. Buckingham's first assignment of error, we conclude that the trial court did not abuse its discretion in finding that Mrs. Buckingham's agreement reflected the parties' agreement, as stated in open court.

**{¶ 28}** The second assignment of error is overruled.

**{¶ 29}** The final judgment and decree of divorce will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Kent J. DePoorter
F. Ann Crossman
Michelle M. Maciorowski
Hon. Steven L. Hurley