[Cite as *State v. Cruise*, 2012-Ohio-2907.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                  :    JUDGES:
                              :
                              :    Hon. Patricia A. Delaney, P.J.
          Plaintiff-Appellee   :    Hon. William B. Hoffman, J.
                              :    Hon. John W. Wise, J.
-vs-                          :
                              :    Case No. 11CA73
MARTIN CRUISE, JR. (s*ic*)      :
                              :
                              :
          Defendant-Appellant  :    O P I N I O N


CHARACTER OF PROCEEDING:        Appeal from the Richland County Court of
                                Common Pleas, Case No. 2010-CR-572



JUDGMENT:                       AFFIRMED



DATE OF JUDGMENT ENTRY:         June 25, 2012



APPEARANCES:

For Appellant:                  For Appellee:

R. JOSHUA BROWN                 JAMES J. MYER, JR.
32 Lutz Ave.                    RICHLAND COUNTY PROSECUTOR
Lexington, OH 44904
                                DANIEL BENOIT
                                38 South Park Street
                                Mansfield, OH 44902

*Delaney, J.*

{¶1} Appellant Martin D. Cruise, Sr. appeals from the judgment entry of conviction and sentence entered in the Richland County Court of Common Pleas on July 27, 2011. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} This case arose in the late-night hours of July 10, 2009, into the early-morning hours of July 11, 2009. Sometime between midnight and 2:45 a.m., residents in the Temple Court neighborhood of Mansfield, Ohio, heard a number of shots ring out. One resident, Angel Thompson, got up to look around, but didn't see anyone. No one called the police, and a number of witnesses later said shots were not unusual in the neighborhood. The next day, however, Thompson went for a walk and looked for evidence of the shots. He discovered shell casings on the ground in front of the residence at 160 Temple Court, home of Lloyd Keeton, and called police.

{¶3} The ensuing investigation into the shots fired led to the unraveling of a chain of criminal acts perpetrated by appellant. At trial, the state pieced together events from the testimony of a large number of witnesses, many of whom dissembled, changed their stories, or claimed to "forget" operative events. The following facts are adduced from the record of appellant's trial.

### *Trouble between Appellant and Lloyd "Jerry" Keeton*

{¶4} Appellant and Lloyd Keeton argued with each other, but witnesses differed on the source of the disagreement. According to some witnesses, the bad blood originated with appellant's advances to Keeton's wife at the time. According to others, they argued because appellant's son, Martin Cruise Jr. ("Martin"), had stolen a

laptop and pills from Keeton. Either way, witnesses agreed that the tension culminated sometime in late May or early June, 2009, when Keeton wanted to "talk" to appellant. During this conversation, Keeton "decked" appellant and appellant fell to the ground. Appellant was described as "beat badly" by Keeton: his eye was cut, his nose was busted, and his mouth was bloody.

{¶5} In the wake of this altercation, appellant told several people he would seek revenge against Keeton.

*The Stolen Gun*

{¶6} Several weeks later, appellant's friend and roommate Dave Ethel was house-sitting at the home of a special deputy for the Richland County Sheriff's Department. Appellant was a guest at the home for a cookout.

{¶7} When the special deputy returned after his trip, he discovered his gun was missing, a 9-millimeter Smith and Wesson 659, described as stainless steel with black grips. The gun contained a 15-round magazine of ammunition provided by the Richland County Sheriff's Department: Federal brand hydroshock 9-millimeter hollow-point shells with small projectiles in the center. The gun was stored in a black soft case with a combination lock, which was also missing.

{¶8} The missing gun and case were eventually tied to a small Ford pickup truck which the deputy's wife had given to appellant. This truck brought the entire series of events full circle to appellant.

*Break-In at the Mifflin Market and Pursuit*

{¶9} Around 3:00 a.m. on July 11, the same night Keeton's house was fired upon, someone attempted to break into the Mifflin Market in the village of Mifflin, Ohio.

A nearby park ranger gave chase to the suspect vehicle: a Ford pickup truck containing four individuals. The ranger chased the pickup truck into a field before stopping the pursuit, and the occupants of the truck fled on foot and were not located.

{¶10} Ultimately the occupants of the vehicle were determined to be appellant, his son Martin, Kenneth Holstine, and April Swanigan.

{¶11} By researching the temporary tag on the wrecked abandoned pickup truck, a connection was made with the Richland County special deputy whose gun had been stolen. When the deputy came to the impound lot to view the truck, he saw the soft black case from the stolen gun still sitting on the seat.

{¶12} The gun itself was never found.

*Stolen Gun Tied to Bullets at Keeton Scene*

{¶13} A number of spent bullets were recovered from the scene of the Keeton drive-by shooting; they were determined to be Federal brand 9-millimeter luger jacketed hollow-point hydroshock bullets which were all fired from the same gun. Personnel from the Bureau of Criminal Identification and Investigation narrowed down the possible firearm to one of two models: Smith and Wesson or Fabrique Nationale.

{¶14} Dave Ethel testified that in the early morning hours of July 10, 2009, he found appellant sitting on the stairs, upset, saying he "really messed up" and that he had ditched his truck after running from the cops.

{¶15} Two of appellant's neighbors and another roommate testified that on or around the day of the shooting, appellant had shown off a 9-millimeter Smith and Wesson firearm, silver with black grips, which he planned to use to "get revenge" on

someone. When asked where he got the gun, appellant had told witnesses "not to worry about it."

*Testimony of Martin Cruise, Jr.*

{¶16} Appellee called appellant's son Martin, a juvenile, as a witness. Upon being called to the stand, Martin's first words were "I'm not testifying." The trial court sent the jury out of the courtroom and advised him he would be in contempt of court if he refused to testify.

{¶17} Ralph Bove, Martin's attorney, noted on the record he had counseled his client he must testify. The trial court asked Bove whether Martin could be housed in the county jail, and Bove replied he didn't think so but would need a short amount of time to research the issue. A representative from Richland County Children's Services, also present in the courtroom on behalf of Martin, stepped forward and stated on the record minors cannot be housed with adults. The trial court then asked whether the juvenile detention facility would hold Martin temporarily, and advised Bove he would have an opportunity to object.

{¶18} After further discussion regarding an unrelated issue, the trial court advised the jury Martin refused to testify and would not appear.

{¶19} Later in the trial, however, Martin was again called to the stand, and out of the presence of the jury he asked the trial court whether he could purge the contempt by testifying. The trial court answered yes, but warned him not to play games.

{¶20} Martin testified he was in the pickup truck with appellant when appellant shot at Keeton's residence.

{¶21} At the conclusion of his testimony, Martin asked the trial court whether he would face additional charges, and the trial court noted there was nothing to purge because he had testified; therefore he was not in contempt.

*Conviction and Sentence*

{¶22} Appellant was found guilty of one count of improperly discharging a firearm into a habitation, one count of receiving stolen property, one count of improper handling of a firearm in a motor vehicle, and four counts of felonious assault. Each count of felonious assault was accompanied by a firearm specification. Appellant was acquitted of one count of tampering with evidence. The trial court sentenced appellant to an aggregate prison term of 29 years.

{¶23} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶24} Appellant raises one Assignment of Error:

{¶25} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY THREATENING TO INCARCERATE (IN THE COUNTY JAIL) A JUVENILE WITNESS CALLED BY THE STATE, FOR REFUSING TO TESTIFY."

I.

{¶26} Appellant argues his right to a fair trial was violated by what he characterizes as the trial court's "coercion" of the testimony of Martin Cruise, Jr. We disagree and therefore overrule appellant's sole assignment of error.

{¶27} Generally the decision of a trial court whether to find an individual in contempt of court will not be disturbed on appeal absent an abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 74, 573 N.E.2d 62 (1991).

{¶28} Pursuant to R.C. 1907.38, "* * *[W]hen a person in attendance refuses to testify as a witness, and no valid excuse is shown, the judge may punish the person as for contempt, and, if he does so, the judge shall enter any fine or imprisonment imposed on the docket. * * *." Additionally, R.C. 2705.02(C) provides, "A person guilty of any of the following acts may be punished as for a contempt: [a] failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required."

{¶29} First and most importantly, we note the trial court never found Martin Cruise, Jr. in contempt of court, much less sentence him to any term in an adult correctional facility. Had the trial court done so, it would have been up to Martin Cruise, Jr. to appeal the ruling, and the question of whether a juvenile witness may be incarcerated in an adult correctional facility as punishment for an act of contempt in an adult criminal proceeding would be relevant to that appeal.

{¶30} That issue is not relevant to this appeal, and we therefore decline to offer an advisory opinion.

{¶31} Instead, this appeal turns on a narrower issue: whether the threat of a contempt finding against Martin Cruise, Jr. somehow violated appellant's right to a fair trial, even though no finding of contempt was ever made. Again, we disagree with appellant's underlying factual premises that Martin Cruise, Jr. was "coerced" into testifying and that his testimony was somehow the linchpin that served to convict appellant.

{¶32} Martin Cruise, Jr. was delivered to the trial court to testify from the juvenile correction facility where he had been housed for sixteen days, and to which

he would return pending outcome of his own delinquency proceedings.  Indeed, the record showed that Martin Cruise, Jr. was in and out of detention throughout the course of the entire investigation.  The trial court did not make a finding of contempt, and only mentioned the possibility of holding Martin Cruise Jr. in an adult facility; the trial court also gave Martin Cruise, Jr.'s attorney (present in the courtroom throughout his client's outburst) time to research the issue.  Ultimately the issue was moot because the juvenile chose to testify.

{¶33} Nor was the testimony of Martin Cruise, Jr. indispensable to the jury's finding of guilt.  While his son was the only witness to state directly that he was with appellant when appellant shot at Keeton's residence, the mountain of corroborating circumstantial evidence rendered the son's testimony little more than a footnote in the parade of witnesses at trial.

{¶34} We rejected similar arguments in *State v. Rembert*, in which a defendant argued that he was denied a fair trial when the trial court threatened to find a witness in contempt.  5th Dist. No. 04 CA 66, 2005-Ohio-4718, appeal not allowed, 108 Ohio St.3d 1417, 2006-Ohio-179, 841 N.E.2d 320.  As in the instant case, unsupported allegations that an appellant's rights have been compromised is insufficient:

> It is axiomatic that in order for there to be reversible error, there must be prejudice to the appellant.  See *State v. Dean*, 94 Ohio App. 540, 16 N.E.2d 767 (1953); *Tingue v. State*, 90 Ohio St. 368, 108 N.E. 222 (1914).  We fail to see how appellant's right to a fair trial was prejudiced by the trial court's actions in regard to [the witness'] testimony.  The argument that [the witness'] rights were violated by the trial court is not directly relevant to whether appellant's

rights were violated. Appellant makes no argument as to how or why the trial court's actions toward [the witness] affected appellant's rights. There is no allegation whatsoever that [the witness] was pressured to lie or otherwise act inappropriately as a response to the trial court's conduct toward [the witness]. As such, we find appellant's arguments meritless.

Similarly, appellant in the instant case fails to point to any prejudice in the record, beyond the fact that his son offered testimony against him.

{¶35} Having found no merit in appellant's argument, we overrule the sole assignment of error and affirm the judgment of the Richland County Court of Common Pleas.

By: Delaney, P.J.

Hoffman, J. and

Wise, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

PAD:kgb

[Cite as *State v. Cruise*, 2012-Ohio-2907.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MARTIN CRUISE, JR. (*sic*) | : | |
| | : | |
| | : | Case No. 11CA73 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the

Richland County Court of Common Pleas is affirmed.  Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE